[No. 52376-7-I.   Division One.   March 1, 2004.]

ARKADI GONTMAKHER, ET AL., *Appellants*, v. THE CITY OF BELLEVUE, *Respondent*.

*Kevin B. Hansen* and *James S. Fitzgerald* (of *Livengood Fitzgerald & Alskog, P.L.L.C.*), for appellants.

*Matthew J. Segal* and *Stephen A. Smith* (of *Preston Gates & Ellis, L.L.P.*), for respondent.

COLEMAN, J. — The legislature enacted RCW 4.24.510 to encourage the reporting of potential wrongdoing to governmental entities.[1] One who provides information to a governmental entity is immune from civil liability based on that communication. A city of Bellevue (City) employee contacted the State Department of Natural Resources (DNR) about clear-cutting on property owned by Arkadi and Yelena Gontmakher. The Gontmakhers sued the City, claiming that the employee's communication with DNR violated RCW 64.40.020 because it was arbitrary and capricious and sought damages based on the decline in property value and lost profits. The trial court granted the City's motion for summary judgment, holding that the City was immune from liability under RCW 4.24.510 and awarded costs and attorney fees under both RCW 4.24.510 and RCW 64.40.020(2). The Gontmakhers appeal, arguing that the City is not entitled to immunity because it is not a

---

[1] RCW 4.24.510 is often characterized as Washington's "anti-SLAPP" statute. SLAPP is an acronym for Strategic Lawsuits Against Public Participation. *See generally* George W. Pring & Penelope Canan, *Strategic Lawsuits Against Public Participation (SLAPPS): An Introduction for Bench, Bar and Bystanders*, 12 BRIDGEPORT L. REV. 937 (1992).

"person" under the statute. We affirm the trial court because the City is a "person" under RCW 4.24.510 and the trial court did not err in awarding attorney fees. Additionally, the order is affirmed because (1) the City's actions were not arbitrary, capricious, unlawful, or in excess of lawful authority; (2) the City processed the application within the time prescribed by law; (3) the Gontmakhers received adequate administrative relief; and (4) the Gontmakhers did not suffer compensable damages under RCW 64.40-.020(2).

## Facts

Arkadi and Yelena Gontmakher purchased a two-acre plot in Bellevue's Bridle Trails neighborhood. In March 1999, the Gontmakhers submitted a short plat application to the city of Bellevue to divide the property into two lots. The Bellevue City Code requires that significant trees be retained during the permit approval and review process.[2] In June 2000, the Gontmakhers withdrew their short plat application and obtained a building permit to construct a new single family residence on the property. The Gontmakhers also applied for a clearing and grading permit. The City issued the clearing and grading permit in September 2000, and the Gontmakhers removed all the trees from the property in November 2000. Several of the Gontmakhers' neighbors complained to the City about the tree removal.

In January 2001, the Gontmakhers entered into a contract with a third party to sell a portion of the property for $650,000. The sale was contingent upon the Gontmakhers receiving preliminary short plat approval by October 1, 2001.

The Gontmakhers filed a second short plat application on February 20, 2001. On February 28, 2001, the City informed the Gontmakhers that their application was incomplete and that they had 60 days to complete the application.

---

[2] BELLEVUE CITY CODE 20.20.520.

On April 10, 2001, the Gontmakhers requested a 60-day extension to complete the application. The City extended the due date for completeness until June 28, 2001. The application was deemed complete on June 28, 2001. Under Bellevue City Code, the City had 120 days to process the short plat application after it was deemed complete, which made the City's deadline October 28, 2001.

On July 23, 2001, Jean Taylor, the Bellevue city planner assigned to the Gontmakher application, sent an e-mail to Bob Lombard from the utilities department, asking for his comments on the application and indicating that she hoped to have her staff report regarding the Gontmakher application completed by July 30, 2001.

Concerned about the clear-cutting, Taylor discussed the situation with her supervisor, Dan Hardin, and the Director of Land Use Planning, Carol Helland. After the discussion, Taylor contacted the DNR to report the Gontmakhers' actions. On July 24, 2001, the City put the short plat application on hold pending the DNR review.

On August 28, 2001, a forester from the DNR visited the property and determined that the Gontmakhers' clear-cutting violated the Forest Practices Act of 1974, chapter 76.09 RCW. The DNR issued a stop work order on September 7, 2001, which mandated a six-year moratorium on developing the property. As required by the stop work order, the City cancelled the Gontmakhers' short plat application. The Gontmakhers filed an appeal with the Forest Practices Appeal Board. On September 28, 2001, the DNR rescinded the stop work order and the City reinstated the short plat application.[3] The short plat application was approved, with conditions, on October 15, 2001.[4]

---

[3] The DNR independently investigated the Gontmakhers. The City did not participate in the investigation beyond Taylor's initial communication.

[4] In their opening brief, the Gontmakhers state that the short plat application was approved on October 24, 2001. The letter to the Gontmakhers informing them of approval was dated October 15, 2001 and listed the publication date as October 25, 2001. The discrepancy in date does not affect our analysis.

After the short plat was approved, the Gontmakhers sought administrative review to have the City's conditions removed. The hearing examiner struck one condition, modified one condition, and affirmed the remaining conditions. The Gontmakhers then filed a Land Use Petition Act (LUPA), chapter 36.70C RCW, petition to challenge the remaining conditions. The superior court dismissed the LUPA petition because the Gontmakhers had not met their burden of proof. The Gontmakhers appealed that decision, but the appeal was dismissed.[5]

In February 2002, the Gontmakhers sued the City, claiming that its "conduct was arbitrary, capricious, unlawful, and/or exceeded its lawful authority," and therefore violated RCW 64.40.020.[6]

In February 2003, the City and the Gontmakhers filed cross motions for summary judgment. The trial court granted the City's motion for summary judgment and dismissed the Gontmakhers' motion. The City also sought attorney fees and expenses under RCW 4.24.510 and RCW 64.40.020(2). The trial court awarded attorney fees of $64,920 and expenses of $6,106.41 under both statutes. The Gontmakhers appeal, challenging the trial court's grant of summary judgment and award of attorney fees and expenses.

## Standard of Review

■ Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The appellate court will engage in the same inquiry as the trial court and may affirm an order granting summary judgment on any basis supported by the record. "The law is clear that

---

[5] The LUPA petition is not before this court.

[6] The Gontmakhers also brought a claim under 42 U.S.C. § 1983 and a tortious interference with business expectancy claim. Both of these claims were dismissed prior to the trial court's decision on summary judgment and are not before this court.

'an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court.'" *Heath v. Uraga*, 106 Wn. App. 506, 515, 24 P.3d 413 (2001) (quoting *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986)).

## Discussion

We first address whether the City is a "person" under RCW 4.24.510. The statute provides:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

When interpreting a statute, the court's primary objective is to determine the legislature's intent and, if clear, the court must afford the statute its plain meaning. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002). For purposes of construing statutes, RCW 1.16.080(1) provides: "[t]he term 'person' may be construed to include the United States, this state, or any state or territory, or any *public or private corporation* or limited liability company, as well as an individual." RCW 1.16-.080(1) (emphasis added).[7] The City argues that the legislature intended this definition to apply to RCW 4.24-.510, and thus, it is a "person" under the statute.

The Gontmakhers, on the other hand, argue that the plain meaning of "person" is limited to citizens with rights

---

[7] RCW 4.24.510 has already been applied to entities, as opposed to natural persons, including a community council and a bank. *See Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 384, 46 P.3d 789 (2002); *Dang v. Ehredt*, 95 Wn. App. 670, 683-86, 977 P.2d 29 (1999).

under the first amendment to the United States Constitution and article I, section 5 of the Washington State Constitution. In making this argument, the Gontmakhers rely on language in related statutes and the note to RCW 4.24.510.[8] RCW 4.24.500 states that "[i]nformation provided by *citizens* concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government." (Emphasis added.) The term "citizens" is also used in RCW 4.24.520, which permits an agency to intervene on a citizen's behalf. Additionally, in a note to RCW 4.24.510, the legislature mentioned that "SLAPP (Strategic Lawsuits Against Public Participation) suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution." LAWS OF 2002, ch. 232.

While protecting citizens may have been the legislature's primary motivation in enacting RCW 4.24.500 through .520, there is no evidence that the legislature intended to limit the scope of the statute to exclude governmental entities. The legislature is presumed to know the general definition of "person" under RCW 1.16.080. If the legislature intended to employ a limited definition of "person," the normal and expected practice would be for it to expressly do so.[9]

Additionally, there is no compelling policy reason to restrict the application of RCW 4.24.510 to nongovernmental entities. The Gontmakhers argue that the absolute immunity afforded under the statute provides a disincentive for governmental actors to respect citizens' rights. This

---

[8] The Gontmakhers correctly point out that the courts must look at the context of the statute and related statues when determining the plain meaning of a particular statutory provision. *Campbell & Gwinn*, 146 Wn.2d at 11 (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)).

[9] The Gontmakhers argue that RCW 4.24.510 does not apply to the City because the City does not possess rights under the First Amendment. While the comment to the statute does state that SLAPP lawsuits, in general, are meant to curb the exercise of the First Amendment rights, it does not restrict the scope of the statute. Thus, we do not address whether the City, as a municipal corporation, has rights under the first amendment to the United States Constitution and article I, section 5 of the Washington State Constitution. We do note, however, that cities have an interest in speaking on behalf of their constituents.

same argument, however, can also be made about private citizens: giving private citizens absolute immunity from any action stemming from communications to governmental agencies serves as a disincentive for citizens to ensure that their comments are made in good faith. The legislature, however, evidenced that this was not its concern by specifically broadening the scope of the immunity to remove the good faith requirement. Additionally, it is important to note that RCW 4.24.510 protects only communications made to governmental agencies that are reasonably of concern to that agency. RCW 4.24.510 does not provide immunity for any other acts. Because the scope of the immunity is limited, allowing governmental immunity here is not against public policy. Additionally, in her declaration in support of the City's motion for summary judgment, the DNR Forest Practice Coordinator, Susan Casey, stated that such reports by governmental agencies are common and are important to the proper agency functioning:

> There was nothing unusual about the City of Bellevue's communication with DNR regarding the Gontmakher Property. Information regarding forest practices, such as the practices observed on the Gontmakher Property, is important to DNR to ensure common understanding of jurisdiction and DNR rules as they relate to a specific activity. *DNR encourages, and routinely receives, communications from cities, counties and neighbors throughout the State regarding forest practices like the timber harvesting on the Gontmakher Property.*

(Emphasis added.) This statement supports the conclusion that there is a strong public policy rationale for including governmental entities in the definition of "person."

In arriving at this conclusion, we are aware of a recent Division Three opinion that addresses, in passing, whether a governmental entity is a "person" under RCW 4.24.510. In *Skimming v. Boxer*, 119 Wn. App. 748, 82 P.3d 707 (2004), Division Three considered whether Spokane County was entitled to immunity under RCW 4.24.510 when the county's executive officer commented to a newspaper about a citizen. The court concluded, in dicta, that the county was not entitled to immunity under RCW 4.24.510:

On its face, the statute does not apply here for a number of reasons. First, the alleged defamatory comments were . . . communications to a newspaper, not to a public officer. Second, the communication could not have been intended to influence government action or outcome. *Right-Price [Recreation, L.L.C. v. Connells Prairie Cmty. Council]*, 146 Wn.2d [370,] 382[, 46 P.3d 789 (2002)] . . . . Third, *the action must be against a non-government individual or organization. Id.* Ms. Boxer is chief executive officer of Spokane County, and Spokane County is a government entity to whom complaints under this statute are protected. And, finally, the communication does not relate to a substantive issue of interest or social significance.

*Skimming*, 119 Wn. App. at 758 (emphasis added). The italicized statement is made without analysis, and the conclusion is not central to the court's holding.[10] The central issue in *Skimming* was that the immunity statute did not apply because the communication at issue was not made to a governmental agency. Because the communication was made to a private newspaper, RCW 4.24.510 clearly did not apply. The *Skimming* court appears to rely on *Right-Price* for the proposition that the immunity provision of RCW 4.24.510 does not apply to a governmental agency. The court in *Right-Price*, however, did not hold that RCW 4.24.510 does not apply to governmental agencies. In *Right-Price*, the court stated:

The citizens' groups characterize Right-Price's suit against them as a Strategic Lawsuit Against Public Participation (SLAPP). A SLAPP primarily involves "communications made to influence a governmental action or outcome." GEORGE W. PRING & PENELOPE CANAN, SLAPPs: GETTING SUED FOR SPEAKING OUT 8 (1996). The communications result "in (a) a civil complaint or counterclaim (b) filed against nongovernment individuals or organizations . . . on (c) a substantive issue of some public interest or social significant." *Id.* at 8-9.

---

[10] From the opinion, we do not know how extensively this particular issue was briefed. Additionally, because RCW 4.24.510 clearly did not apply because the communication was not to a governmental agency, analyzing whether the statute excludes immunity for governmental entities was not central to the court's decision and explains the passing comment and absence of analysis. On the other hand, we received extensive briefing on the precise issue of whether RCW 4.24.510 applies to governmental entities.

The citizens' groups refer to former RCW 4.24.510 as the "anti-SLAPP statute." *Regardless of the label, we examine the elements of the statute and find they are applicable to this case.*

*Right-Price*, 146 Wn.2d at 382 (emphasis added). The court in *Right-Price* merely discussed the general characteristics of SLAPP suits and did not address whether the legislature intended to restrict the scope of RCW 4.24.510. Thus, the general characteristics of a SLAPP lawsuit, as cited by the Gontmakhers and the court in *Right-Price*, do not affect our analysis because we look only to the statute as written. We decline to follow *Skimming* in concluding that RCW 4.24.510 applies only to nongovernmental entities. We hold, after examining RCW 4.24.510 as written, that RCW 4.24-.510 does not preclude application to governmental entities. Because the City is a person under RCW 4.24.510 and the Gontmakhers' claim is based solely on the City's communication to the DNR, we affirm the trial court's grant of summary judgment in favor of the City.

Affirmed. The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BAKER and SCHINDLER, JJ., concur.