182 P.3d 480 (2008)
Michael SEGALINE, a single person, Appellant,
v.
The STATE of Washington, DEPARTMENT OF LABOR AND INDUSTRIES, Washington, Alan Croft, Jane Doe Croft and the marital community thereof, Respondents.
No. 35823-9-II.
Court of Appeals of Washington, Division 2.
April 29, 2008.
*483 Jean Marie Schiedler-Brown, Attorney at Law, Seattle, WA, for Appellant.
Kenneth Douglas Orcutt, Office of the Attorney General, Olympia, WA, for Respondents.
QUINN-BRINTNALL, J.
¶ 1 Michael Segaline appeals the summary judgment dismissal and award of statutory attorney fees to the Department of Labor and Industries (L & I). Segaline owns Horizon Electric, Inc., located in East Wenatchee. To conduct his business, Segaline obtained electrical permits from L & I on several occasions. After several incidents, L & I employees began to fear that Segaline would physically assault them, and L & I served him with a "no trespass" notice. After receiving the notice, Segaline went to L & I offices and L & I employees called 911. The East Wenatchee police arrested Segaline. The City of Wenatchee initially charged Segaline with criminal trespass, but it later voluntarily dismissed the charges. Thereafter, Segaline sued L & I for (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, (3) malicious prosecution, (4) negligent supervision, and (5) violation of his civil rights. On various grounds, the trial court summarily dismissed all of Segaline's claims and awarded L & I statutory damages under RCW 4.24.510.
¶ 2 Segaline appeals, arguing: (1) L & I is not immune from civil liability under RCW 4.24.510, (2) summary judgment was improperly granted on various grounds, and (3) the trial court abused its discretion when it refused to allow Segaline's amended claim to relate back to the original pleading date. We affirm.

FACTS
Background
¶ 3 Segaline owns Horizon Electric in East Wenatchee. Horizon Electric is an electrical contractor that often obtains electrical permits from L & I. Segaline frequently obtained such permits for his corporation, and, on many occasions, he verbally threatened L & I employees. By the fall of 2002, many L *484 & I employees were concerned that Segaline would physically assault them.
¶ 4 On June 9, 2003, Segaline called L & I customer service specialist Alice Lou Hawkins. He eventually demanded that she transfer the phone call to her supervisor, Jeanne Guthrie. Segaline complained to Guthrie about one of his L & I accounts and then threatened to come to the L & I offices with an audio tape recorder. According to Guthrie, Segaline claimed that "he would start legal proceedings"; "a lot of people would be behind bars"; and "if it costs you your job, so be it." 1 Clerk's Papers (CP) at 45. Segaline also made what Guthrie believed were veiled death threats.
¶ 5 On June 10, 2003, David Whittle, an L & I supervisor, called Segaline to try to resolve the conflict. They agreed to meet at the L & I offices on June 19, 2003. On previous occasions, Segaline had insisted on audio tape recording his conversations with L & I employees. Whittle informed Segaline that he could bring an audio tape recorder to this meeting, but he was not sure whether Segaline would consent to recording their meeting.
¶ 6 Later that same day, Segaline arrived at the L & I offices and complained to Guthrie about Whittle. According to Guthrie, he demanded that she either produce a copy of the statute prohibiting him from audio tape recording his conversations with L & I employees or produce a copy of Whittle's résumé to "join the private sector." 1 CP at 45.
¶ 7 On June 13, 2003, Segaline again went to the L & I offices, where Jacqueline Sanchez helped him. Segaline argued and yelled, so Sanchez asked Guthrie for help. According to Guthrie, Segaline then threatened her and stated, "You had better get an attorney." 1 CP at 45.
¶ 8 On June 19, 2003, Whittle and Alan Croft, a L & I coordinator, met with Segaline at the L & I offices. All three participants agreed to audio tape record the meeting. But Whittle withdrew his permission to recording after the meeting yielded no progress toward resolving Segaline's complaints. Segaline then walked out of the meeting and demanded to speak to Guthrie.
¶ 9 Croft followed Segaline and asked him twice to leave the L & I offices. Segaline ignored him. Croft then called 911 and twice more asked Segaline to leave the L & I offices. Again, Segaline ignored him. Segaline finally left the L & I offices just as the East Wenatchee police arrived. Police talked with Segaline, then Croft.
¶ 10 According to Croft, the police suggested that L & I serve Segaline with a "no trespass" notice that police could enforce if Segaline returned to the offices. The police did not have a "no trespass" notice form but suggested Croft obtain one from the Wenatchee Valley Mall. Croft did so.
¶ 11 Croft then contacted Washington State Patrol Trooper Scott Jarmon, who was assigned to workplace violence issues at L & I. Croft explained the problems L & I was having with Segaline. According to Croft, Jarmon said that L & I could serve individuals with a "no trespass" notice to prohibit them from entering a public building and that he, Jarmon, had enforced such notices.
¶ 12 Croft drafted a "no trespass" notice and emailed it to Guthrie. The notice stated that Segaline was "no longer permitted, invited, licensed or otherwise privileged to enter or remain at the [East Wenatchee L & I service location]." 1 CP at 39. It also provided:
To have this notice terminated, the subject must secure the written approval of David Whittle, Electrical Supervisor, prior to re-entry of the East Wenatchee Department of Labor and Industries service location. This trespass notice remains in effect until this approval is obtained.
1 CP at 39.
¶ 13 On June 30, 2003, Segaline arrived at the L & I offices. Hawkins told Segaline that he "was not to be in the office," and handed him a copy of the "no trespass" notice. 1 CP at 37. After Segaline pushed the "no trespass" notice aside, somebody called 911. The East Wenatchee police found Segaline outside the L & I offices and again served him with the "no trespass" notice. *485 According to Hawkins, Segaline refused to acknowledge the notice.
¶ 14 On August 21, 2003, Segaline went to the L & I offices again to obtain an electrical permit. Guthrie met Segaline because she knew he had been served with the "no trespass" notice. Jim Dixon, an L & I inspector, had approved Segaline's emergency request for an electrical permit and had told him to obtain an electrical permit. But according to Guthrie, Dixon did not tell Segaline to obtain the permit personally. Nevertheless, Dixon gave Segaline the electrical permit and Segaline left.
¶ 15 Segaline arrived at the L & I offices again the next day. This time, Guthrie called 911 and Larry Hively, an L & I investigator, told Segaline about the 911 call. The East Wenatchee police found Segaline in the L & I offices. Police learned from an L & I supervisor that the "no trespass" notice was still in effect and then told Segaline to leave. Segaline refused and instead argued with the police. According to Officer Daniel Dieringer, Segaline said that he could enter the L & I offices any time he wanted.
¶ 16 According to the police, Segaline admitted that he received the "no trespass" notice, but he claimed that it was not valid because it was not signed by a judge. The police concluded that "there was nothing more [required] to keep Segaline away from the L & I office staff," then arrested him for trespassing. 1 CP at 56.
¶ 17 The City of Wenatchee charged Segaline with criminal trespass, but later the City voluntarily dismissed the charges.[1]
Lawsuit
¶ 18 On August 8, 2005, Segaline filed a complaint against L & I for (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, (3) malicious prosecution, (4) negligent supervision, and (5) violation of his civil rights. The trial court granted L & I's summary judgment motion and summarily dismissed all but the negligent infliction of emotional distress claim.
¶ 19 About a year after the lawsuit commenced, Segaline filed a motion under CR 15 to amend his complaint to name Croft as a defendant and to allow the amendment to relate back to the original filing date of August 5, 2005. The trial court determined that the amendment would not relate back but that the amendment was filed on August 3, 2006. After denying Segaline's motion for reconsideration, the trial court then dismissed his claim against Croft because the statute of limitations had expired.[2] Segaline timely appeals.

ANALYSIS
Summary Judgment Standard of Review
¶ 20 On an appeal from summary judgment, we engage in the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). Our standard of review is de novo. Hisle, 151 Wash.2d at 860, 93 P.3d 108. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990)).
¶ 21 On summary judgment, the moving party bears the burden of demonstrating that *486 there is no genuine issue of material fact. Atherton, 115 Wash.2d at 516, 799 P.2d 250. "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute." Atherton, 115 Wash.2d at 516, 799 P.2d 250. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value. Seattle Police Officers Guild v. City of Seattle, 151 Wash.2d 823, 848, 92 P.3d 243 (2004) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986)). If the nonmoving party fails to demonstrate that material facts are in dispute, then summary judgment is proper. Atherton, 115 Wash.2d at 516, 799 P.2d 250.
Immunity Under RCW 4.24.510
¶ 22 Segaline first claims that the trial court erred when it found that L & I was immune from civil liability under RCW 4.24.510 and then summarily dismissed all of his claims against L & I except for his negligent infliction of emotional distress claim.[3] We disagree.
¶ 23 "The Legislature enacted RCW 4.24.510 to encourage the reporting of potential wrongdoing to governmental entities." Gontmakher v. City of Bellevue, 120 Wash. App. 365, 366, 85 P.3d 926 (2004). It provides in relevant part:
A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.
RCW 4.24.510 (emphasis added.)
¶ 24 Segaline argues that (1) L & I is not a "person" and, therefore, the statute does not apply to it; (2) the statute is unconstitutional without an implied "good faith" requirement; (3) his malicious prosecution claim is not "based upon" a communication to police; and (4) attorney fees and costs were improperly awarded under this statute.
A. State Agencies are "Persons" Under RCW 4.24.510
¶ 25 Segaline argues that L & I is not a "person" under RCW 4.24.510. Division One of this court held in Gontmakher, 120 Wash.App. at 374, 85 P.3d 926, that a city is a person under RCW 4.24.510. We agree with the analysis in Gontmakher and accordingly hold that state agencies are "persons" under RCW 4.24.510 and, therefore, are immune from civil liability in this context.
¶ 26 In Gontmakher, our Supreme Court ruled that the City of Bellevue is a "person" under RCW 4.24.510. 120 Wash.App. at 374, 85 P.3d 926. The court first looked to RCW 1.16.080(1), which states that "[t]he term person may be construed to include the United States, this state, or any state or territory, or any public or private corporation or limited liability company, as well as an individual." RCW 1.16.080 defines "person" for purposes of the entire Revised Code of Washington. State v. Jeffries, 42 Wash.App. 142, 145, 709 P.2d 819 (1985), review denied, 105 Wash.2d 1013 (1986). The court then noted that both the Washington Court of Appeals and Supreme Court had applied RCW 4.24.510 to a community council and a bank. Gontmakher, 120 Wash.App. at 370 n. 7, 85 P.3d 926 (citing Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wash.2d 370, 384, 46 P.3d 789 (2002); Dang v. Ehredt, 95 Wash.App. 670, 683-86, 977 P.2d 29, review denied, 139 Wash.2d 1012, 994 P.2d 847 (1999)). Finally, the court concluded that no compelling policy reason existed to restrict the application of RCW 4.24.510 to nongovernmental entities.[4]Gontmakher, 120 Wash. *487 App. at 371-72, 85 P.3d 926. Accordingly, it rejected the appellants' argument that the plain meaning of "person" is limited to citizens with rights under the state and federal constitution. Gontmakher, 120 Wash.App. at 370-71, 85 P.3d 926.
¶ 27 L & I is a state agency and hence a person for purposes of making a request for protection to a law enforcement agency. Jeffries, 42 Wash.App. at 145, 709 P.2d 819 (state agency is a person under RCW 1.16.080). Accordingly, the trial court did not err in finding that RCW 4.24.510 applies in this context.
B. No Evidence of Bad Faith
¶ 28 Segaline argues that, even if RCW 4.24.510 applies to L & I, the statute does not grant absolute immunity because it contains an implicit requirement of good faith, without which it would be unconstitutional under the First Amendment. But we do not reach a constitutional issue if we can decide the case on nonconstitutional grounds. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 752-53, 49 P.3d 867 (2002). Because there is no evidence in this record that L & I's communication was not in good faith, we affirm on nonconstitutional grounds.
¶ 29 Former RCW 4.24.510 (1999) required that the communication was made in good faith. In 2002, the legislature deleted the phrase "in good faith" preceding "communicates a complaint or information" in the first sentence of the statute. RCW 4.24.510; former RCW 4.24.510. And the legislature added, "Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." RCW 4.24.510. Thus, RCW 4.24.510 placed the burden on Segaline to prove that L & I made the communications in bad faith or without an honest belief in the statements. Lillig v. Becton-Dickinson, 105 Wash.2d 653, 657, 717 P.2d 1371 (1986); Gilman v. MacDonald, 74 Wash.App. 733, 738-39, 875 P.2d 697, review denied, 125 Wash.2d 1010, 889 P.2d 498 (1994). Segaline then had to show by clear and convincing evidence that L & I abused its qualified immunity, i.e., that L & I knew or recklessly disregarded the falsity of its communications. Lillig, 105 Wash.2d at 658, 717 P.2d 1371; Bender v. City of Seattle, 99 Wash.2d 582, 601, 664 P.2d 492 (1983); Gilman, 74 Wash.App. at 738, 875 P.2d 697.
¶ 30 Segaline claims that L & I knew that he was not a safety threat. Segaline also claims that his "exclusion from the department was arbitrary and not based upon whether or not he was conducting himself properly." Br. of Appellant at 17. But a party's self-serving statements of conclusions and opinions are insufficient to defeat a summary judgment motion. Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 359-61, 753 P.2d 517 (1988). And other than the opinions in his appellate brief and his conclusory statements of fact in his declaration in opposition to summary judgment, Segaline has not provided "some showing that related evidence was available which would justify a trial on the issue" of bad faith. See Reed v. Streib, 65 Wash.2d 700, 707, 399 P.2d 338 (1965). Moreover, ample evidence, detailed above, supports L & I's concern that Segaline was abusive and disruptive to its employees and that its employees feared him. Accordingly, the trial court did not err when it refused to require L & I to prove it acted in good faith.
C. RCW 4.24.510 Applies to Malicious Prosecution Claim
¶ 31 Segaline further argues that RCW 4.24.510 does not apply to his claim for malicious prosecution. Again, we disagree.[5]
*488 ¶ 32 On its face, RCW 4.24.510 allows immunity for claims "based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." (Emphasis added.) Clearly, claims challenging the communications itself, here to 911 and police, are "based upon" the communication.
¶ 33 In Dang, Division One held that immunity under RCW 4.24.510 is not limited solely to communications. 95 Wash.App. at 683-84, 977 P.2d 29. The court noted that "allowing a cause of action for the events surrounding the communication to the police, while immunizing the communication itself, would thwart the policies and goals underlying the immunity statute." Dang, 95 Wash. App. at 683, 977 P.2d 29 (citing Devis v. Bank of Am., 65 Cal.App.4th 1002, 77 Cal. Rptr.2d 238, 242 (1998)). "Moreover . . . no meaningful distinction can be drawn between the cause of action based on the . . . communication to the police and a cause of action based on the method of arriving at the content of the communication." Dang, 95 Wash. App. at 683, 977 P.2d 29. We agree.
¶ 34 Here, the trial court properly found that Segaline's negligent supervision claim was "based upon," or was the result of, L & I's communications to the police. See RCW 4.24.510. Thus, the trial court did not err in summarily dismissing these claims because Segaline failed to raise an issue of material fact regarding L & I's immunity under RCW 4.24.510.
D. Attorney Fees and Costs
¶ 35 Segaline also challenges the trial court's award of attorney fees and costs to L & I under RCW 4.24.510. RCW 4.24.510 provides:
A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.
L & I prevailed in its RCW 4.24.510 defense and there was no evidence of bad faith. Thus, the trial court did not err when it followed this statute's mandatory authority to award attorney fees and costs.
Negligent Infliction of Emotional Distress
¶ 36 Segaline next argues that the trial court erred when it summarily dismissed his negligent infliction of emotional distress claim because his damages were not sufficiently foreseeable. Segaline argues, "In this case, the State was aware that excluding a member of the public from purchasing permits to further his own business would be likely to cause emotional distress."[6] Br. of Appellant at 41. We disagree.
¶ 37 A plaintiff can recover for negligent infliction of emotional distress if he proves: (1) negligence, i.e., duty, breach, proximate cause, and injury; and (2) the additional requirement of objective symptomatology. Kloepfel v. Bokor, 149 Wash.2d 192, 199, 66 P.3d 630 (2003); see also Snyder v. Med. Serv. Corp., 145 Wash.2d 233, 243-46, 35 P.3d 1158 (2001). But our Supreme Court has cautioned: "Not every act which causes harm results in legal liability." Hunsley v. Giard, 87 Wash.2d 424, 434, 553 P.2d 1096 (1976).
¶ 38 Under traditional negligence principles, whether a defendant owes a duty to a plaintiff is a question of law and depends on mixed considerations of "logic, common sense, justice, policy, and precedent." Keates v. City of Vancouver, 73 Wash.App. *489 257, 265, 869 P.2d 88, review denied, 124 Wash.2d 1026, 883 P.2d 327 (1994) (quotations and citations omitted). In large part, foreseeability determines the scope of a defendant's duty. Hunsley, 87 Wash.2d at 435, 553 P.2d 1096. Specifically, "`the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.'" Snyder, 145 Wash.2d at 245, 35 P.3d 1158 (quoting Hunsley, 87 Wash.2d at 436, 553 P.2d 1096). Thus, if a defendant could not reasonably foresee any injury as the result of his act, or if a defendant's conduct was reasonable in light of what he could anticipate, then there is no actionable negligence. Hunsley, 87 Wash.2d at 435, 553 P.2d 1096.
¶ 39 A defendant breaches a duty owed to a plaintiff when his conduct "`falls below the standard established by law for the protection of others against unreasonable risk.'" Hunsley, 87 Wash.2d at 435, 553 P.2d 1096 (quoting W. Prosser, Handbook of the Law of Torts § 43, at 250 (4th ed.1971)). Necessarily, a breach of this duty involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. Hunsley, 87 Wash.2d at 436, 553 P.2d 1096.
¶ 40 We agree with the trial court that the emotional harm Segaline complains of was not foreseeable. Where reasonable minds cannot differ, we decide the issue of foreseeability as a matter of law. Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 477, 951 P.2d 749 (1998). To be foreseeable, "`the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant.'" Christen v. Lee, 113 Wash.2d 479, 492, 780 P.2d 1307 (1989) (quoting Maltman v. Sauer, 84 Wash.2d 975, 981, 530 P.2d 254 (1975)). And we assess the risk as it would affect a person of ordinary sensibilities. Hunsley, 87 Wash.2d at 436, 553 P.2d 1096; Keates, 73 Wash.App. at 266, 869 P.2d 88.
¶ 41 The chance is slight that a person of ordinary sensibilities who had engaged in numerous heated verbal confrontations with L & I staff would develop objective symptoms of emotional distress from being served a no trespass notice and removed from the L & I property.[7] And the chance that any such harm would be grave is even less.
¶ 42 Thus, regardless of L & I's duty to Segaline, we hold that as a matter of law any emotional distress resulting from L & I's conduct to protect its employees was not reasonably foreseeable. Therefore, the trial court did not err when it granted summary judgment to L & I on this claim. See Hunsley, 87 Wash.2d at 435, 553 P.2d 1096. We hold that summary judgment was proper.
Civil Rights Violations
¶ 43 Segaline appears to argue that the trial court erred when it summarily dismissed his 42 U.S.C. § 1983 civil rights claims. We disagree. L & I is immune to § 1983 lawsuits.
¶ 44 Under 42 U.S.C. § 1983,[8] a plaintiff may recover money damages if he can show that he has been deprived of some federal right. Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 11, 829 P.2d 765, cert. denied sub nom., 506 U.S. 1028, 113 S.Ct. 676 (1992). To state a cause of action under § 1983, a plaintiff must demonstrate that (1) a person deprived him of a federal constitutional or legal right and (2) that person acted under *490 color of state law. Sintra, 119 Wash.2d at 11-12, 829 P.2d 765.
¶ 45 But the State is immune to lawsuits under 42 U.S.C. § 1983 for acts of its agents that allegedly deprive the plaintiff of his civil rights. Hontz v. State, 105 Wash.2d 302, 309, 714 P.2d 1176 (1986) (citing Edgar v. State, 92 Wash.2d 217, 222, 595 P.2d 534 (1979), cert. denied, 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980); Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (states are immune from 42 U.S.C. § 1983 damage suits in federal court under the Eleventh Amendment)). Because L & I is a state agency, Segaline's § 1983 suit is in legal effect a suit against the state and cannot, therefore, be maintained. See Hontz, 105 Wash.2d at 311, 714 P.2d 1176. Thus, the trial court did not err in summarily dismissing Segaline's civil rights claims.
CR 15(c) Relation Back
¶ 46 Segaline further argues that the trial court abused its discretion when it refused to allow his amendment, which added Croft as a defendant, to relate back to the date of the original complaint. We affirm because Segaline has not shown that the trial court's ruling was an abuse of discretion.
¶ 47 CR 15(c)[9] rulings rest within the trial court's sound discretion. Foothills Dev. Co. v. Clark County Bd. of County Comm'rs, 46 Wash.App. 369, 374, 730 P.2d 1369 (1986), review denied, 108 Wash.2d 1004 (1987). We will not disturb such rulings absent a manifest abuse of that discretion. Foothills Dev. Co., 46 Wash.App. at 374, 730 P.2d 1369.
¶ 48 An amendment adding a party relates back to the date of the original pleading only if three conditions are met: (1) the added party had notice of the original pleading; (2) the added party had actual or constructive knowledge that, but for a mistake concerning the proper party, the action would have been brought against him; and (3) the plaintiff's failure to timely name the correct party was not "due to inexcusable neglect." CR 15(c); Tellinghuisen v. King County Council, 103 Wash.2d 221, 223, 691 P.2d 575 (1984) (citation omitted).
¶ 49 The burden of proof is on the party seeking the relation back of the amendment to prove the conditions precedent under CR 15(c). Foothills Dev. Co., 46 Wash.App. at 375, 730 P.2d 1369. This party also has the burden of proving that the mistake in failing to amend in a timely fashion was excusable. Foothills Dev. Co., 46 Wash. App. at 375, 730 P.2d 1369. "When no reason for the omission appears from the record, the omission will be characterized as inexcusable." Foothills Dev. Co., 46 Wash.App. at 375, 730 P.2d 1369.
¶ 50 Segaline had the burden of proof on all issues and he failed to show that his failure to amend in a timely fashion was excusable. As of December 2005, Segaline knew that Croft had "drafted and designed" the "no trespass" notice. 2 CP at 220. When Segaline deposed Croft on June 9, 2006, Croft clearly stated, "I ended up creating [the "no trespass" notice] and providing the template . . . to use." 2 CP at 235. Yet for no stated or apparent reason, Segaline waited until August 3, 2006, to amend his complaint to name Croft as a defendant and seek damages under 42 U.S.C. § 1983. When "the parties are apparent, or are ascertainable upon reasonable investigation, the failure to name them will be held to be inexcusable." Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 174, 744 P.2d 1032, 750 P.2d 254 (1987). Thus, the trial court did not err when it ruled that *491 Segaline's amendment would not relate back to the date of the original pleading.
¶ 51 Moreover, the trial court correctly concluded that the statute of limitations barred Segaline's 42 U.S.C. § 1983 claim against Croft. The general three-year limitation period for personal injuries under Washington law applies to § 1983 claims. Robinson v. City of Seattle, 119 Wash.2d 34, 86, 830 P.2d 318, cert. denied, 506 U.S. 1028, 113 S.Ct. 676 (1992). Segaline's claim against Croft accrued when Segaline knew or had reason to know of the injury that is the basis of his claim. Cloud v. Summers, 98 Wash.App. 724, 731, 991 P.2d 1169 (1999). This discovery rule is objective; thus, "it is of no moment that [the moving party] lacked actual subjective knowledge." Ernstes v. Warner, 860 F.Supp. 1338, 1341 (S.D.Ind. 1994); see Cloud, 98 Wash.App. at 731, 991 P.2d 1169. In other words, Segaline's claim against Croft accrued, at the very latest, when the police served Segaline with L & I's "no trespass" notice on June 30, 2003.[10] But Segaline's amended claim against Croft related back only to August 3, 2006, the date Segaline filed the amendment, rather than the date of the original complaint, August 8, 2005. Therefore, the three-year statute of limitations had already expired for Segaline's 42 U.S.C. § 1983 claim against Croft.[11]
¶ 52 We affirm.
We concur: BRIDGEWATER, P.J., and HUNT, J.
NOTES
[1] Croft stated in an email:

The attorney prosecuting for the city just called and stated that the city moved to dismiss the case against Mr. Segaline today. Apparently this was based on the defense that he was permitted within the service location for the emergency permit the day before he was arrested and that he thought that he was then allowed to be within the service location as usual.
3 CP at 426.
[2] Alternatively, the trial court found that Croft was entitled to qualified immunity.
[3] RCW 4.24.510 protects only communications made to governmental agencies that are reasonably of concern to that agency. Gontmakher v. City of Bellevue, 120 Wash.App. 365, 372, 85 P.3d 926 (2004). Thus, RCW 4.24.510 does not provide immunity for any other acts, such as negligent infliction of emotional distress, that are not "based upon" the communications. See Gontmakher, 120 Wash.App. at 372, 85 P.3d 926; Dang v. Ehredt, 95 Wash.App. 670, 683-86, 977 P.2d 29, review denied, 139 Wash.2d 1012, 994 P.2d 847 (1999).
[4] The Gontmakher court also discussed a recent Division Three opinion that addressed, in passing, whether a governmental entity was a "person" under RCW 4.24.510. 120 Wash.App. at 372-73, 85 P.3d 926 (quoting Skimming v. Boxer, 119 Wash.App. 748, 82 P.3d 707, review denied, 152 Wash.2d 1016, 101 P.3d 108 (2004)). In Skimming, Division Three concluded, in dicta, that a county was not entitled to immunity under RCW 4.24.510. Gontmakher, 120 Wash.App. at 372, 85 P.3d 926; Skimming, 119 Wash.App. at 757, 82 P.3d 707. Division One declined to follow Skimming because the statement was "made without analysis, and the conclusion is not central to the court's holding." Gontmakher, 120 Wash.App. at 373, 85 P.3d 926. We agree.
[5] We note that the malicious prosecution claim seems to be moot because the State dropped Segaline's trespassing charge, but we address the issue because Segaline still has a no-contact order preventing him from entering L & I property. See Asarco, Inc. v. Dep't of Ecology, 145 Wash.2d 750, 760, 43 P.3d 471 (2002) (ruling that appellate courts do not generally rule on issues for which there is no real and live controversy) (quoting First United Methodist Church of Seattle v. Hearing Exam'r, 129 Wash.2d 238, 245, 916 P.2d 374 (1996)).
[6] L & I argues that its conduct, serving of a no trespass notice, was not unreasonably dangerous to Segaline. Thus, relying on Keates v. City of Vancouver, 73 Wash.App. 257, 869 P.2d 88, review denied, 124 Wash.2d 1026, 883 P.2d 327 (1994), L & I essentially claims that it owed no duty to use reasonable care to avoid negligent infliction of emotional distress when it served Segaline with the no trespass notice. L & I's argument is an over-simplification of negligence law; this argument actually addresses the scope of L & I's duty and whether it breached that duty.
[7] Segaline argues that emotional distress is a foreseeable harm when one's constitutional rights are violated. But the cases he relies on do not support his position: See Birchler v. Castello Land Co., 133 Wash.2d 106, 942 P.2d 968 (1997); Dean v. Mun. of Metro. Seattle, 104 Wash.2d 627, 641, 708 P.2d 393 (1985); Miles v. F.E.R.M. Enters., Inc., 29 Wash.App. 61, 627 P.2d 564 (1981).
[8] 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
[9] CR 15(c) reads:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
[10] Although Croft "drafted and designed" the "no trespass" notice, he was not present when the police arrested Segaline. 2 CP at 220. Croft did not learn of Segaline's arrest until after it had occurred.
[11] Because of this holding, we do not need to decide whether Croft had qualified immunity.