[No. 26031-3-III.   Division Three.   September 18, 2008.]

ANNE BAILEY ET AL., *Respondents*, v. THE STATE OF WASHINGTON ET AL., *Respondents*, KAREN LINDHOLDT, *Petitioner*.

*Laurel H. Siddoway*, for petitioner.

*William J. Powell* (of *Powell, Kuznetz & Parker, PS*); and *Robert M. McKenna, Attorney General*, and *Amy C. Clemmons, Assistant*, for respondents.

¶1 KULIK, J. — Anne Bailey was terminated from her position as the risk manager at Eastern Washington Uni-

versity (EWU). She filed this action against Karen Lindholdt and several other defendants, alleging tortious interference with a business expectancy, retaliation for the exercise of Ms. Bailey's First Amendment rights, wrongful discharge, and intentional infliction of emotional distress. Ms. Bailey contends she was terminated because of information Ms. Lindholdt gave to EWU. Ms. Lindholdt moved for dismissal based on the immunity afforded under RCW 4.24.510. The trial court denied Ms. Lindholdt's motion. The Supreme Court granted discretionary review and transferred the case to this court.

¶2 RCW 4.24.510 grants immunity to a person who communicates a complaint or information to any branch or agency of federal, state, or local government. Immunity extends to any "claims based upon the communication to the agency or organization regarding any matter reasonably of concern" to that agency. RCW 4.24.510. We conclude that RCW 4.24.510 provides immunity to Ms. Lindholdt for her communications to EWU. Thus, we reverse the trial court and dismiss Ms. Bailey's claims against Ms. Lindholdt.

## FACTS

¶3 Anne Bailey was the risk manager for EWU. In August 2005, Ms. Bailey attended the Spokane County Air Pollution Control Authority (SCAPCA) board meeting. The principal business was to hear complaints from two businesses dissatisfied with the administration of clean air regulations by SCAPCA. Ms. Bailey attended the meeting because she was concerned about a communication that SCAPCA sent out to private asbestos consulting firms. She believed that the communication was an attempt to revise the SCAPCA regulations without going through a formal process.

¶4 Ms. Bailey addressed the board during the public comment portion of the meeting. She identified herself as the risk manager for EWU and explained her concerns about the change in asbestos regulations.

¶5 On August 29, Eric Skelton, the director of SCAPCA, wrote a letter to Ms. Bailey questioning why Ms. Bailey felt compelled to criticize SCAPCA.

¶6 Ms. Bailey attended another SCAPCA board meeting on September 1. During the public concerns portion of the meeting, Ms. Bailey again introduced herself as the risk manager for EWU. She complained about Mr. Skelton's letter and repeated her concerns about the change in regulations.

¶7 Ms. Lindholdt, and her husband Paul Lindholdt, a professor at EWU, were also present at the September 1 meeting. At some point, Ms. Lindholdt learned that Ms. Bailey had been charged with embezzlement during previous employment and that she had pleaded guilty to third degree theft.

¶8 On September 7, Ms. Lindholdt called Laurie Connelly, special assistant to the president at EWU. Ms. Connelly's notes state:

> She indicated that Anne [Bailey] attended two meetings regarding SCAPCA. At the first meeting she spoke about concerns about SCAPCA's procedures to adopt regulations. At the second meeting, she spoke about how Eric Skelton, the SCAPCA director, had wronged her and failed to place her on a mailing list as she had requested. She stated that Anne has gotten the ear of a SCAPCA board member and that as a result the SCAPCA board is having a personnel session regarding Mr. Skelton. Karen also claims that Anne's husband is an asbestos remove[r] who will profit from[. . . .]
>
> Her concern is whether Anne has the authority to speak for Eastern and whether she has a conflict of interest and is representing her husband's interest and not Eastern's.

Clerk's Papers (CP) at 89.

¶9 In September, Mr. Skelton resigned his position with SCAPCA. On September 26, SCAPCA held a special board meeting. In response to the board's discussion of Ms. Bailey's complaints, Ms. Lindholdt advised the board that Ms. Bailey's husband worked for an asbestos removal

company and that Ms. Bailey had been convicted of third degree theft. Ms. Lindholdt suggested that Ms. Bailey was motivated by personal interests.

¶10 On September 28, Ms. Lindholdt requested a meeting with the president of EWU and reiterated her earlier accusations concerning Ms. Bailey. The same day, Anthony Flinn, a professor at EWU and a colleague of Mr. Lindholdt's, sent a communication to the EWU president repeating Ms. Lindholdt's allegations.

¶11 On October 5, Ms. Lindholdt and Professor Flinn met with Acting EWU President Brian Levin-Stankevich. On October 14, Ms. Bailey's supervisor, Jolynn Rogers, interviewed Ms. Lindholdt. Ms. Rogers also interviewed Professor Flinn.

¶12 In a November 14 letter, the SCAPCA board told Ms. Bailey that she was welcome to come to public meetings and that it was the board's understanding that her testimony at the August and September SCAPCA meetings was as an individual citizen.

¶13 On October 31, Ms. Lindholdt sent a facsimile to Ms. Rogers containing the judgment and sentence showing that Ms. Bailey had been convicted of third degree theft. The facsimile also contained the statement on plea in which Ms. Bailey stated that "I took a $350 check of my employer's and converted it to my own use." CP at 137.

¶14 EWU Policy 550-040-100(1) allows an at-will employee to be terminated at any time, with or without cause, upon 30 days' written notice. On December 1, EWU terminated Ms. Bailey's employment at EWU, effective January 2, 2006.

¶15 Following her termination, Ms. Bailey and her husband brought suit against Ms. Lindholdt, the State of Washington, EWU, and three of EWU's employees.

¶16 The amended complaint alleged in part that

(1) Ms. Lindholdt called the assistant to the president at EWU and falsely accused Ms. Bailey of speaking on behalf

of EWU and having a conflict of interest in representing her husband's business and not EWU.

(2) Ms. Lindholdt spoke to the board of SCAPCA and told them that Ms. Bailey came to the SCAPCA meeting as an EWU employee, and that Mr. Bailey worked for an asbestos removal company and would benefit from SCAPCA's inability to regulate. Ms. Bailey alleged that Ms. Lindholdt falsely stated that Ms. Bailey had been terminated or resigned and then charged with embezzlement in Benton County. Ms. Lindholdt stated that Ms. Bailey is not the kind of person who should be employed by EWU.

(3) Ms. Lindholdt called the assistant to the president at EWU and repeated her allegations. She also stated that Ms. Bailey had been charged with felony embezzlement and demanded an investigation.

(4) Ms. Rogers received a document entitled "Chronology of Ann[e] Bailey's Actions on SCAPCA," signed by Professor Flinn. CP at 104. This chronology contained the same allegations made by Ms. Lindholdt and called into question Ms. Bailey's association with EWU.

(5) Ms. Lindholdt and Professor Flinn met with the acting president of EWU, Mr. Levin-Stankevich, and repeated the allegations, demanding an investigation.

(6) Ms. Lindholdt met with Ms. Rogers twice and repeated her allegations. Ms. Lindholdt sent pertinent Benton County court documents to Ms. Rogers. Ms. Bailey acknowledges that she pleaded guilty to third degree theft in Benton County. Ms. Bailey alleged the actions of Ms. Lindholdt and Professor Flinn were taken with knowledge of the falsity of their communications or with reckless disregard as to their falsity and were not made in good faith.

(7) Ms. Lindholdt's and Professor Flinn's conduct was the proximate cause of her termination from employment at EWU.

¶17 Ms. Lindholdt filed a special motion to dismiss and for an award of fees, costs, and statutory damages. Ms.

Bailey and her husband filed affidavits in response. Ms. Lindholdt argued that she was immune from liability under RCW 4.24.510. The court denied the motion. Ms. Lindholdt then filed a motion for certification or clarification. The trial court entered an order, concluding "as a matter of law that the Anti-SLAPP[1] statute, RCW 4.24.510, was not intended to provide a shield of immunity to interfere with a contractual relationship with another person's employer." CP at 182.

¶18 Ms. Lindholdt filed for discretionary review by the Supreme Court. The Supreme Court granted the request for discretionary review and transferred the appeal to this court.

## ANALYSIS

¶19 Ms. Lindholdt filed a special motion to dismiss. She argues that a motion under CR 12(b)(6) is proper in this case. Ms. Lindholdt maintains that trial courts should meet the objective of the immunity statute by dismissing claims at the earliest opportunity. She points out that there is support for early dismissal review in qualified and absolute immunity cases. *See, e.g., Robinson v. City of Seattle,* 119 Wn.2d 34, 65, 830 P.2d 318 (1992) (qualified immunity granted in 42 U.S.C. § 1983 cases requires that insubstantial claims must be resolved quickly); *Taggart v. State*, 118 Wn.2d 195, 206, 822 P.2d 243 (1992) (defense of common law immunity that is not adequately negated should be dismissed even though that discovery could prove the claim).

¶20 Under CR 12(b), when matters outside the pleadings are presented to the court and not excluded, the motion will be treated as a motion for summary judgment under CR 56. After Ms. Lindholdt filed her special motion to dismiss, the Baileys filed their amended complaint and affidavits. These documents were not excluded by the court.

---

[1] "Strategic Lawsuit Against Public Participation."

Consequently, Ms. Lindholdt's special motion to dismiss must be treated as a motion for summary judgment.

¶21 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court. *Id.* Facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999). Conclusions of law are reviewed de novo. *Id.* The construction of a statute is a question of law reviewable de novo. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

¶22 *Anti-SLAPP Statute.* Ms. Lindholdt asserts that Ms. Bailey's claim should have been dismissed based on Ms. Lindholdt's immunity under RCW 4.24.510.

¶23 Ms. Lindholdt characterizes Ms. Bailey's action as a SLAPP. The purpose of Washington's anti-SLAPP legislation is set out in RCW 4.24.500:

> *Information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and efficient operation of government.* The legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending against such suits can be severely burdensome. The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make *good-faith reports* to appropriate governmental bodies.

(Emphasis added.)

■ ¶24 RCW 4.24.500 articulates a policy to protect citizens who come forward with information that will help make law enforcement and government more efficient and more effective. The term "efficient operation of government" is particularly broad.

■ ¶25 RCW 4.24.510 is referred to as the "anti-SLAPP statute." *Right-Price Recreation, LLC v. Connells Prairie*

*Cmty. Council*, 146 Wn.2d 370, 382, 46 P.3d 789 (2002). This provision contains the operative part of the legislative scheme. RCW 4.24.510 reads in pertinent part:

> A *person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.* A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. *Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.*

(Emphasis added.)

¶26 "The legislature enacted RCW 4.24.510 to encourage the reporting of potential wrongdoing to governmental entities." *Gontmakher v. City of Bellevue*, 120 Wn. App. 365, 366, 85 P.3d 926 (2004).

¶27 In summary, immunity applies under RCW 4.24.510 when (1) a person "communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization" and (2) the complaint is based on any matter "reasonably of concern to that agency."

¶28 Former RCW 4.24.510 (1999) contained a good faith requirement. This phrase was deleted by amendment. LAWS OF 2002, ch. 232, § 2; *see Segaline v. Dep't of Labor & Indus.*, 144 Wn. App. 312, 325, 182 P.3d 480 (2008).

¶29 The basis of Ms. Bailey's amended complaint is that Ms. Lindholdt communicated information to representatives of EWU. Ms. Lindholdt's communications that Ms. Bailey was purportedly representing EWU without authority and that Ms. Bailey may have a conflict of interest constitute communications of reasonable concern to EWU. Similarly, Ms. Lindholdt's statements that Ms. Bailey had been charged with embezzlement were a matter of reason-

able concern to EWU. The fact that these communications resulted in Ms. Bailey's termination also demonstrates that they were matters of reasonable concern to EWU.

¶30 Ms. Bailey asserts that immunity under RCW 4.24-.510 does not attach here because Ms. Lindholdt cannot meet the good faith requirement contained in RCW 4.24-.500. She points to the language in RCW 4.24.500, the policy statement, which reads, "The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make *good-faith reports* to appropriate governmental bodies." (Emphasis added.) RCW 4.24.500 has not been amended. LAWS OF 1989, ch. 234, § 1.

¶31 But Ms. Bailey is incorrect. The 2002 amendments brought "Washington law . . . in line with these court decisions which recognize[ ] that the United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making." LAWS OF 2002, ch. 232, § 1. Moreover, the 2002 amendment of RCW 4.24.510 provided that *statutory damages* may be denied if the court finds that the complaint or information was communicated in *bad faith. See* LAWS OF 2002, ch. 232, § 2.

¶32 When construing conflicting statutes, the court may discern legislative intent by applying principles of statutory construction. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 210, 118 P.3d 331 (2005) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). When engaging in statutory construction, the court must presume that the legislature was aware of its prior interpretations of legislative enactments. *State v. Ose*, 156 Wn.2d 140, 148, 124 P.3d 635 (2005).

¶33 When two statutes appear to conflict, the rules of construction direct the court to, if possible, reconcile them so as to give effect to both provisions. *In re Pers. Restraint of King*, 110 Wn.2d 793, 799, 756 P.2d 1303 (1988). The provision later in the chapter prevails if it is more specific than the provision occurring earlier in the chapter. *J.P.*, 149 Wn.2d at 454. The more recent provision prevails if it is

more specific than its predecessor. *Id.* Significantly, statutory policy statements do not give rise to enforceable rights and duties. *Melville v. State*, 115 Wn.2d 34, 38, 793 P.2d 952 (1990) (quoting *Aripa v. Dep't of Soc. & Health Servs.*, 91 Wn.2d 135, 139, 588 P.2d 185 (1978), *overruled by State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999)).

¶34 RCW 4.24.510 is the more specific provision because it sets out the requirements for obtaining immunity, while RCW 4.24.500 sets forth the findings and purpose of the legislation. As a policy statement, RCW 4.24.500 does not detail requirements or limitations regarding a right conferred by a provision that is positioned later in the enactment.

¶35 Ms. Bailey argues that this is not a SLAPP action but merely an action for tortious interference with a contract. Ms. Bailey contends that Ms. Lindholdt's communications were not made "to influence a government action or outcome" and the matter of Ms. Bailey's employment at EWU was not "an issue of some public interest or social significance." Br. of Resp't Bailey at 23-24. However, the terms "to influence a government action or outcome" and the terms "public interest or social significance" are not contained in RCW 4.24.510. These terms are contained in the legislative notes on the intent of the 2002 amendment. LAWS OF 2002, ch. 232, § 1.

¶36 To obtain immunity under RCW 4.24.510, the claim against Ms. Lindholdt must be based on a communication she made to EWU "regarding any matter reasonably of concern to that agency or organization." Ms. Lindholdt complained about Ms. Bailey to EWU concerning several matters of reasonable concern to EWU. Thus, her communication falls squarely under the immunity provided by RCW 4.24.510.

¶37 *Statutory Damages.* A person prevailing under RCW 4.24.510 is entitled to recover expenses and reasonable attorney fees. In addition, the person prevailing "shall receive statutory damages of ten thousand dollars [unless] the court finds that the complaint or information was

communicated in bad faith." RCW 4.24.510. The trial court held that immunity did not apply. Ms. Bailey presented no evidence that Ms. Lindholdt's communications were made in bad faith.

¶38  We reverse the trial court and remand for dismissal of Ms. Bailey's claims against Ms. Lindholdt and for an award of expenses, attorney fees, and statutory damages of $10,000. We also award attorney fees and expenses to Ms. Lindholdt on appeal.

SCHULTHEIS, C.J., and BROWN, J., concur.

Reconsideration denied December 3, 2008.

Review denied at 166 Wn.2d 1004 (2009).