# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SUZANNE L. WEINSTOCK, an
individual,
Appellant,

v.

ALAMO RENTAL (US), INC., a
Delaware corporation; ALAMO
FINANCING L.P., a Delaware limited
partnership; MARVIN L. BRYANT, an
individual; LARRY PETERSON, an
individual,

Respondents.

No. 67864-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2013

GROSSE, J. — Washington's anti-SLAPP (strategic lawsuits against public participation) statute, RCW 4.24.510, grants qualified immunity from civil liability to a person who communicates a complaint or information to any branch of local government. Here, the defendants' reporting an overdue rental car as stolen to the appropriate police authority falls within the protected activity, shifting the burden to the plaintiff to demonstrate a reasonable likelihood that she would prevail in the litigation. This the plaintiff was unable to do. Accordingly, we affirm the trial court's summary judgment dismissal and affirm its award of $10,000 in mandatory statutory damages and attorney fees.

## FACTS

On October 6, 2008, Suzanne Weinstock rented a Toyota Highlander from Alamo Rental (US), Inc. at the SeaTac location. Weinstock rented the car for one week ending October 13, 2008, but failed to return the vehicle. Alamo attempted to contact Weinstock, but was unsuccessful. Marvin Bryant, an

employee at Alamo, tried to reach Weinstock at the telephone number provided. Bryant was unable to leave a voicemail because the voicemail box required entry of a pin number, which Weinstock had not provided to Alamo. Additionally, repeated attempts to charge Weinstock's credit card were declined. Alamo sent two demand letters by certified mail, both of which were returned as "undeliverable." On November 24, 2008, after receiving permission from his supervisor, Bryant filed a Rental and Lease Declaration with the Port of Seattle Police Department reporting Weinstock's failure to return the rental vehicle. Bryant had no further involvement in the investigation by the Port of Seattle police, other than responding to questions by the investigating officer.

Larry Peterson was at the Alamo desk when Weinstock first rented the car. Peterson also spoke with Weinstock on November 14, 2008. During that telephone conversation Peterson told Weinstock the car was long overdue, that her credit card had been repeatedly declined, and that she needed to return the vehicle immediately. When Peterson discovered that Weinstock was on the east coast, he told her to return the vehicle to any Alamo location. Peterson finally agreed to permit her to return the vehicle to SeaTac, but told her she needed to do so no later than November 21, 2008. Peterson told her that failure to return the vehicle by that date would result in the car being reported stolen. Peterson had no further communication with either Weinstock or the police.

Weinstock asserts that she had an agreement with Peterson to pay the bill with a check if she kept the car past the one week. Weinstock also contends that she called Alamo on November 20 from South Dakota where she was

experiencing bad weather and was told by someone at Alamo to drive carefully and take her time.

On November 25, 2008, Weinstock was stopped by the police in Skagit County for failure to wear a seatbelt. Weinstock presented the rental agreement, which indicated that the vehicle was to have been returned on October 13, 2008. A vehicle check revealed the car had been reported stolen. Washington State Patrol Trooper Brandon Lee arrested Weinstock. In a search incident to the arrest, Trooper Lee discovered several bags containing items taken from various hotel rooms.

On December 2, 2008, Weinstock was charged with possession of a stolen motor vehicle pursuant to RCW 9A.56.068. The information was amended to include a gross misdemeanor, third degree possession of stolen property, apparently pertaining to the hotel property found by the trooper. Those criminal charges were subsequently dropped.[1]

While the criminal charges were pending, Weinstock brought a civil action against Alamo claiming defamation, outrage, invasion of privacy, and a violation of the Consumer Protection Act, chapter 19.86 RCW. Subsequently, on the defendants' motion, the trial court granted summary judgment dismissal of Weinstock's claims because they all arose from Alamo's communication to the Port of Seattle police. The court also awarded Alamo $10,000 in mandatory statutory damages and attorney fees. Weinstock appeals.

---

[1] Weinstock has moved this court to take judicial notice of the dismissal of the criminal case, which occurred after the trial court issued its ruling. We decline to do so as it has no relevance to the matter before us.

3

ANALYSIS

RCW 4.24.510 grants immunity from civil liability to a person who communicates a complaint or information to any branch or agency of federal, state, or local government.[2] Such immunity extends to "claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." RCW 4.24.510. In enacting this statute, our legislature recognized that "[i]information provided by citizens concerning potential wrongdoing is vital to effective law enforcement" and that "the threat of a civil action for damages can act as a deterrent to citizens who wish to report" such information. RCW 4.24.500. "The legislature enacted RCW 4.24.510 to encourage the reporting of potential wrongdoing to governmental entities."[3]

Former RCW 4.24.510 (1999) contained a requirement that the communication be made in good faith. That language was eliminated in a 2002 amendment, and the sentence allowing statutory damages to be denied on a finding of bad faith was added.[4] Nevertheless, Weinstock argues that the anti-

---

[2] RCW 4.24.510 provides in pertinent part:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government, . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

[3] Gontmakher v. The City of Bellevue, 120 Wn. App. 365, 366, 85 P.3d 926 (2004).

[4] LAWS OF 2002, ch. 232, § 2.

4

SLAPP statute still requires good faith because RCW 4.24.500 states, "The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make good-faith reports to appropriate governmental bodies." This precise issue was decided in Bailey v. State.[5] There, the court determined that there is no good faith requirement in RCW 4.24.510.[6] The Bailey court reasoned that the 2002 amendments brought "'Washington law . . . in line with [United States Supreme Court] decisions which recognize[ ] that the United States Constitution protects advocacy to government, regardless of motive, so long as it is designed to have some effect on government decision making.'"[7] Further, it applied rules of statutory construction that a later enactment prevails if it is more specific. RCW 4.24.510 is more specific than RCW 4.24.500. Moreover, as the Bailey court stated, policy statements do not give rise to enforceable rights and duties.[8]

Weinstock argues that factual disputes remain. But it is undisputed that all of Weinstock's claims against Alamo arise from Alamo's reporting the rental car as stolen when Weinstock had failed to return it some 43 days after the one-week rental period expired. Even if we assume all of Weinstock's assertions in her declarations are true and admissible, her claims are still barred.

There is no dispute that Weinstock did not return the car by November 21, 2008, pursuant to her "special agreement" with the manager. The car had still not been returned by November 24, 2008, when Alamo filed the report. There

---

[5] 147 Wn. App. 251, 191 P.3d 1285 (2008).

[6] Bailey, 147 Wn. App at 262.

[7] Bailey, 147 Wn. App. at 262 (some alterations in original) (quoting LAWS OF 2002, ch. 232 § 1).

[8] Bailey, 147 Wn. App. at 262-63.

was no business record reflecting a telephone call from Weinstock or that someone from Alamo told Weinstock to take her time when she allegedly reported bad driving conditions in South Dakota.[9] There is no evidence that the later report by Alamo personnel to the police that the car had not been returned was malicious. In Dang v. Ehredt,[10] this court held that bank employees were immune from liability for claims arising from their conduct in contacting police and retaining the driver's license of a bank customer whom they suspected of fraud. This immunity existed even though the bank customer was later cleared of any wrongdoing. Here, the report on Weinstock's failure to return the rental car is similarly a matter "reasonably of concern" to the police.

Weinstock argues that Bryant's communication to the police is not covered by the anti-SLAPP statute because it communicated "a matter of purely private concern, unrelated to any matter of political, social, or other concern to the community." This argument was rejected in Bailey, where the court stated:

> [T]he terms "to influence a government action or outcome" and the terms "public interest or social significance" are not contained in RCW 4.24.510. These terms are contained in the legislative notes on the intent of the 2002 amendment. Laws of 2002, ch. 232, § 1.[11]

Under RCW 4.24.510, the only predicate to immunity is that the matter be of reasonable concern to the agency. Accordingly, both Alamo and its employees are immune from liability arising from the communications to the police.

---

[9] Weinstock's affidavits are self-serving hearsay and conclusory in nature. Warner v. Regent Assisted Living, 132 Wn. App. 126, 135-36, 130 P.3d 865 (2006) (a court cannot consider inadmissible evidence, when ruling on a summary judgment motion.)

[10] 95 Wn. App. 670, 681-85, 977 P.2d 29 (1999).

[11] Bailey, 147 Wn. App. at 263.

Weinstock next argues that the statute denies her constitutional right to have access to the courts. When the constitutionality of a statute is challenged, the statute is presumed to be constitutional and the burden is on the party challenging the statute to prove its unconstitutionally beyond a reasonable doubt.[12]

The 2002 amendments were made to reflect that the United States Constitution protects advocacy to government, regardless of content or motive.[13] Indeed, the United States Supreme Court has held that petitions to the government are protected regardless of intent or purpose, so long as the communications are intended to influence government decisions.[14] Weinstock has not met her burden of proof.

Statutory Penalty of $10,000

A party that defeats a lawsuit pursuant to RCW 4.24.510 is entitled to $10,000 in statutory damages. However, the trial court may disallow the damages if it finds that the party acted in bad faith.[15] The trial court's decision to permit those damages is discretionary and will be reviewed for an abuse of discretion. There was no evidence of bad faith upon the part of Alamo or its employees. Alamo was properly awarded the $10,000.

---

[12] Tunstall v. Bergeson, 141 Wn.2d 201, 220, 5 P.3d 691 (2000).

[13] LAWS OF 2002, ch. 232, § 2.

[14] See, e.g., City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365, 369, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991); Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 49-60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993).

[15] RCW 4.24.510 provides that the person prevailing "shall receive statutory damages of ten thousand dollars [unless] . . . the court finds that the complaint or information was communicated in bad faith."

Attorney Fees

Weinstock argues that the attorney fees awarded were not properly segregated and were not reasonable. Washington permits a party to recover attorney fees under a statute, contract, or some well-recognized principle of equity.[16] The appellate court reviews attorney fee awards made pursuant to a statute for abuse of discretion.[17] Here, each of Weinstock's claims arose from the initial action of Alamo's report to the police. As the prevailing party, Alamo is entitled to attorney fees.

Weinstock argues that some of the charges in the billing statements are seemingly not related to the RCW 4.24.510 defense. The amount of the attorney fee award is discretionary and will be overturned only when the court's decision is manifestly unreasonable or based on untenable grounds. Defense counsel submitted detailed records for the time spent working on this matter. The court specifically found that the hourly rates submitted for the various people involved in the defense of this suit were "clearly below [the] market rate" and thus did not merit further discussion. The court reduced Alamo's request for attorney fees from $49,543.25 to $39,000.00 and the costs from $1,647.35 to $149.90 as those reasonably associated with defending the suit. It is clear from these actions that the court undertook a reasoned analysis in awarding the fees and costs involved in the suit. The amount awarded was properly segregated from the total amount

---

[16] Torgerson v. One Lincoln Tower, LLC, 166 Wn.2d 510, 525, 210 P.3d 318 (2009) (citing Quality Food Ctrs. v. Mary Jewell T, LLC, 134 Wn. App. 814, 817, 142 P.3d 206 (2006)).
[17] Humphrey Indus., Ltd. v. Clay Street Assocs., LLC, 170 Wn.2d 495, 506, 242 P.3d 846 (2010).

of fees incurred. Further, the amount awarded was supported by detailed billing statements and reviewed by the trial court. There is a sufficient record for this court to support the findings and conclusions.

Because the statute authorizes attorney fees, and Alamo is the prevailing party, Alamo is entitled to such fees on appeal.

Affirmed.

WE CONCUR: