238 P.3d 1107 (2010)
Michael SEGALINE, a single person, Petitioner,
v.
The STATE of Washington, DEPARTMENT OF LABOR AND INDUSTRIES, Respondent.
No. 81931-9.
Supreme Court of Washington, En Banc.
Argued January 21, 2010.
Decided August 19, 2010.
*1108 Jean Marie Schiedler-Brown, Seattle, WA, for Petitioner.
Kenneth Douglas Orcutt, Jay Douglas Geck, Office of the Attorney General, Olympia, WA, for Respondent.
Daniel G. Lloyd, City of Vancouver Attorneys Office, Vancouver, WA, amicus counsel *1109 for Washington Association of Municipal Attorneys.
SANDERS, J.
¶ 1 We are asked to decide whether a government agency qualifies as a "person" under RCW 4.24.510. Because the purpose of RCW 4.24.510 is to protect free speech rights and a government agency has no such rights to protect, the Washington State Department of Labor and Industries (L & I) is not immune to suit under RCW 4.24.510.
¶ 2 We are also asked to determine whether Michael Segaline's claim in the amended complaint against Alan Croft is time barred. It is.

FACTS
¶ 3 Michael Segaline, an electrical contractor, procured electrical permits in person on a regular basis from the L & I at its East Wenatchee building. On several occasions Segaline conducted himself in a coarse manner. The degree of this coarseness is disputed. Segaline contends he did not yell or threaten physical harm. Employees of L & I state Segaline yelled, shouted, threatened that he would sue them, threatened that he would have them fired, and the extent of his agitation caused them at times to fear for their physical safety.
¶ 4 On June 19, 2003, representatives of L & I, David Whittle, and Alan Croft, met with Segaline concerning his behavior. The meeting was not successful. Although Whittle attempted to discuss how Segaline and L & I's employees could conduct transactions with less conflict in the future, Segaline refused to participate and instead repeatedly demanded Whittle tell him (a) what RCW provision precluded Segaline from tape-recording the meetingeven though Whittle had agreed Segaline could record the meeting and it was being recorded; and (b) for which branch of the government Whittle worked. Segaline then ended the meeting by accusing Whittle of breaking the law by preventing him from talking to Jeanne Guthrie, the field service coordinator for L & I who had been previously unsuccessful with resolving Segaline's complaints. Segaline went to Guthrie's closed office door and started knocking. Unbeknownst to Segaline, Croft eventually called the police. It is disputed whether and to what extent Croft asked Segaline to leave the premises at this point and whether Croft called the police before or after such request. Segaline left as the police arrived.
¶ 5 As suggested by the responding police officer, Croft drafted a "no trespass" notice that stated Segaline was prohibited from entering the L & I building. On June 30, 2003 Alice Hawkins, an L & I employee, presented Segaline with the notice when he came into the office. Segaline pushed the notice aside and stated he could be in the office whenever he wanted. Someone at L & I telephoned the police. The police also provided Segaline a copy of the notice.
¶ 6 On August 21, 2003 Segaline came to the building and was allowed to purchase an electrical permit, but was told the remainder of the paperwork would be mailed to him because he was not allowed on the premises. The next day Segaline came to the office. The police were called; Segaline refused to leave; and he was arrested. The prosecutor ultimately dropped the charges for criminal trespass.
¶ 7 Segaline sued L & I, alleging that barring him from the office and his subsequent arrest constituted (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, (3) malicious prosecution, (4) negligent supervision, and (5) violation of his civil rights.[1] Segaline subsequently moved to amend his complaint to include a 42 U.S.C. § 1983 claim against Croft. The motion was granted.
¶ 8 The trial court dismissed all his claims. The court held RCW 4.24.510 granted L & I immunity from the majority of Segaline's claims, dismissed his negligent infliction of *1110 emotional distress claim as inadequate as a matter of law,[2] and dismissed his 42 U.S.C. § 1983 claim against Croft as untimely. The Court of Appeals affirmed, Segaline v. Dep't of Labor & Indus., 144 Wash.App. 312, 182 P.3d 480 (2008), and we granted review, 165 Wash.2d 1044, 205 P.3d 132 (2009).

ANALYSIS
¶ 9 Segaline obtained review to determine whether (1) immunity under RCW 4.24.510 applies to L & I and (2) whether his 42 U.S.C. § 1983 claim against Croft is untimely.

I. Does a government agency qualify as a "person" under RCW 4.24.510?[3]
¶ 10 RCW 4.24.510 immunizes a "person" who communicates a complaint or information to a branch or agency of the federal, state, or local government from civil liability. The legislature was concerned with civil lawsuits that were being used to intimidate citizens from exercising their First Amendment rights and rights under article I, section 5 of the Washington State Constitution ("strategic lawsuits against public participation," or SLAPP suits), particularly when that speech involved reporting potential wrongdoing to government agencies. See RCWA 4.24.510, Historical and Statutory Notes; see also RCW 4.24.500.
¶ 11 The narrow issue before the court is whether a government agency that reports information to another government agency is a "person" under RCW 4.24.510. "Person" is ambiguous in the statute and its meaning varies within the RCW. "Person" may include government agencies, see, e.g., State v. Jeffries, 42 Wash.App. 142, 145, 709 P.2d 819 (1985) (interpreting "person" to include government agencies in the context of restitution payments under former RCW 9.92.060 (1982)); corporations, see, e.g., In re Brazier Forest Prods., Inc., 106 Wash.2d 588, 595, 724 P.2d 970 (1986) (interpreting "person" to include corporations in the context of logging liens under RCW 60.24.020); or only human beings, see, e.g., RCW 9A.32.030-.070 ("person" used to identify the perpetrator of a homicide).
¶ 12 Here, a government agency is not a "person" under RCW 4.24.510. The purpose of the statute is to protect the exercise of individuals' First Amendment rights under the United States Constitution and rights under article I, section 5 of the Washington State Constitution. RCW 4.24.510, Historical and Statutory Notes. A government agency does not have free speech rights. It makes little sense to interpret "person" here so that an immunity, which the legislature enacted to protect one's free speech rights, extends to a government agency that has no such rights to protect. L & I is not privy to the RCW 4.24.510 immunity.
¶ 13 This analysis is consistent with our previous case law. In Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wash.2d 370, 384, 46 P.3d 789 (2002), this court held two citizens' groups, exercising the free speech rights of their members, were privy to the immunity under RCW 4.24.510. The State's assertion that our decision there opened the floodgates for any entity to claim immunity under RCW 4.24.510 ignores the intent of the statute, which is to protect free speech rights. Where the citizens' groups there had free speech rights to protect, L & I here does not.[4]
¶ 14 The State argues RCW 1.16.080(1) requires state agencies to be included as a "person" under RCW 4.24.510. See also Gontmakher v. City of Bellevue, 120 *1111 Wash.App. 365, 370-71, 85 P.3d 926 (2004).[5] RCW 1.16.080(1) states, "The term `person' may be construed to include the United States, this state, or any state or territory, or any public or private corporation or limited liability company, as well as an individual." This provision does not compel the court to broadly construe "person," but rather the use of "may" permits the court to interpret "person" to include such entities. In re Brazier Forest Prods., Inc., 106 Wash.2d at 595, 724 P.2d 970 (RCW 1.16.080(1) "only allows, but does not require," a broad construction of "person"). This permissive language demonstrates the legislature intended "person" to be defined in specific provisions of the RCW in accordance with the nature and purpose of those provisions. If RCW 1.16.080(1) compelled a broad interpretation of "person" throughout the RCW, it would produce absurd results. For instance, government agencies or corporations could be charged with murder. See RCW 9A.32.030.
¶ 15 Dismissal of Segaline's claims via RCW 4.24.510 was improper and those claims are remanded to the trial court.[6] Since RCW 4.24.510 does not apply here, attorney fees, costs, and statutory damages awarded under that provision are vacated.

II. Did the trial court err when it dismissed Segaline's 42 U.S.C. § 1983 claim as untimely?

a. Did the trial court use the incorrect date from which the statute of limitations ran for Segaline's 42 U.S.C. § 1983 claim?
¶ 16 Section 1983 provides citizens who are deprived of their rights as secured under a federal statute or the United States Constitution a cause of action against a person acting under color of governmental authority. The statute of limitations for Segaline's § 1983 claim is three years from the time the claimant knows or has reason to know of the injury that is the basis of the action. Robinson v. City of Seattle, 119 Wash.2d 34, 86, 830 P.2d 318 (1992). The Court of Appeals held Segaline's claim against Croft was time barred because Segaline knew or should have known of the claimed injury resulting from the no trespass notice on June 30, 2003 when Segaline was served the notice. Segaline, 144 Wash.App. at 332, 182 P.3d 480.
¶ 17 Segaline's representations of the nature and timing of his injury are muddled and contradictory. Segaline provides perhaps the clearest identification of his injury in his opposition to summary judgment: "[T]he decision by [L & I] to deprive plaintiff of his constitutional rights is the crux of his casenot his right to personal liberty from confinement, but his right to be present in a public place." Clerk's Papers (CP) at 199. Segaline asserts this liberty interestto be present in a public placeand any attendant due process rights were infringed when he was served the no trespass notice and, even prior, when he was characterized as someone for whom such a notice was necessary. Reply Br. of Appellant at 15 ("[t]he service of the trespass noticemerely handing it to him on June 30" violated due process); accord id. at 8 (discussing his negligent infliction of emotional distress claim, "his due process and liberty interests were violated" when he "was unfairly characterized as being dangerous without a basis" (emphasis added)); id. at 12 (arguing his liberty and due process rights were "negatively impacted by the no trespass notice and his removal from the office on August 22, 2003" (emphasis added)).[7]
*1112 ¶ 18 The statute of limitations accrued when Segaline knew or had reason to know that his alleged liberty interest to be in a public place and any attendant due process rights were infringed. See Robinson, 119 Wash.2d at 86, 830 P.2d 318. Segaline knew of Croft's no trespass notice, which informed Segaline he was no longer permitted to enter the L & I office, when he was served the notice on June 30, 2003. The Court of Appeals used the correct accrual date for Segaline's 42 U.S.C. § 1983 claim. See Segaline, 144 Wash.App. at 332, 182 P.3d 480.[8] Unless Segaline's amendment to his complaint adding Croft as a defendant relates back to the date of his original filing, his § 1983 claim is time barred.

b. Should Segaline's amended complaint, adding another party, relate back to the time his original complaint was filed?
¶ 19 When a party is added or substituted upon amendment of a complaint, the amended complaint relates back to the date of the original pleading for purposes of a statute of limitations if (1) the new party received notice of the institution of the action so that he or she will not be prejudiced in making a defense on the merits, CR 15(c); (2) the new party knew or should have known that, but for a mistake concerning identity of the proper party, the plaintiff would have brought the action against him or her, id.; and (3) the plaintiff's delay in adding the new party was not due to "inexcusable neglect," Stansfield v. Douglas County, 146 Wash.2d 116, 122, 43 P.3d 498 (2002).[9] The party seeking to amend its complaint has the burden to prove these three conditions were satisfied. Foothills Dev. Co. v. Clark County Bd. of County Comm'rs, 46 Wash.App. 369, 375, 730 P.2d 1369 (1986). Whether this burden is satisfied is a factual determination. We review a trial court's determination for abuse of discretion. Kommavongsa v. Haskell, 149 Wash.2d 288, 295, 67 P.3d 1068 (2003); Foothills Dev. Co., 46 Wash.App. at 375, 730 P.2d 1369.
¶ 20 The only issue disputed here is the third conditionwhether the delay was due to inexcusable neglect. "Inexcusable neglect exists when no reason for the initial failure to name the party appears in the record." Stansfield, 146 Wash.2d at 122, 43 P.3d 498 (citing S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County, 101 Wash.2d 68, 78, 677 P.2d 114 (1984)). We have held delay due to "a conscious decision, strategy or tactic" constitutes inexcusable neglect. Id. at 121, 43 P.3d 498.[10]
¶ 21 Segaline moved to amend his complaint, adding Croft as a party, on August 3, 2006. As justification for the delay, Segaline stated he "could not have known the specific participation of each of the numerous L & I actors in the act of excluding Mr. Selaline [sic] from the L & I premises, until the deposition of key witnesses was completed." CP at 222. The trial court held this did not qualify as excusable neglect and the amendment would therefore not relate back to the original filing date. The Court of Appeals affirmed. Segaline, 144 Wash.App. at 330-32, 182 P.3d 480.
¶ 22 The trial court did not abuse its discretion by refusing to permit Segaline's amended complaint to relate back to the original filing date because Segaline did not *1113 establish excusable neglect. Croft was added to the complaint because he drafted the no trespass notice. On December 5, 2005 Segaline knew Croft drafted the notice when L & I provided that information in its response to Segaline's interrogatories. Yet Segaline did not seek to amend his complaint to add Croft until August 3, 2006nine months later.
¶ 23 Segaline argues the delay was necessary to confirm Croft drafted the notice in his June 9, 2006 deposition and further delay occurred because the deposition was not transcribed until June 25, 2006. The interrogatory response states that "Alan Croft drafted and designed the notice." CP at 290. Segaline fails to show why this statement required Croft to confirm it in person before Segaline could add him as a party.
¶ 24 Furthermore Segaline fails to explain why, after Croft verbally confirmed that he designed and drafted the notice, Segaline did not seek then to amend the complaint. Segaline argues he further delayed so he could obtain the deposition transcript. He does not explain why such a delay was necessary since he already had written (the interrogatory response) and verbal (Croft's deposition) confirmation that Croft designed and drafted the notice. Segaline received the transcript at the end of June and then waited another monthuntil August 3, 2006to file his motion to add Croft as a party. The trial court did not abuse its discretion when it found the delay inexcusable.

CONCLUSION
¶ 25 Immunity under RCW 4.24.510 does not extend to government agencies. We reverse the decision of the Court of Appeals to the contrary and also vacate the award of attorney fees and costs to L & I under RCW 4.24.510. We affirm the dismissal of Segaline's 42 U.S.C. § 1983 claim against Croft as untimely.
WE CONCUR: TOM CHAMBERS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (concurring).
¶ 26 I concur in the conclusion reached by the lead opinion that the Washington State Department of Labor and Industries is not a "person" within the meaning of RCW 4.24.510's immunity from civil liability. However, I reach this conclusion for different reasons than those set forth in the lead opinion.
¶ 27 Chapter 4.24 RCW, when first enacted, "addressed the SLAPP[[1]] indirectly." Michael E. Johnston, A Better Slapp Trap: Washington State's Enhanced Statutory Protection for Targets of "Strategic Lawsuits Against Public Participation", 38 Gonz. L.Rev. 263, 281 (2002-03) (hereafter Johnston, 38 Gonzaga L.Rev.). The legislature recognized:
Information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government. The legislature finds that threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending such suits can be severely burdensome. The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make good-faith reports to appropriate governmental bodies.
RCW 4.24.500. Former RCW 4.24.510 (1989), "[t]he operative provision of the legislative package," provided that "`a person who communicate[d] in good faith with a government body [was] immune from liability stemming from that communication.'" Johnston, 38 Gonzaga L.Rev. at 281 (quoting former RCW 4.24.510). The individual could recover costs and attorney fees expended in defense against a SLAPP filer. Former RCW 4.24.510.
¶ 28 "As originally enacted, sections 4.24.500-.520 did not afford a SLAPP target with a particularly efficient remedy. While the target could ordinarily expect to prevail, it had to endure considerable litigation before it could do so." Johnston, 38 Gonzaga L.Rev. at 288. The legislature accordingly amended RCW 4.24.510, stating:

*1114 Strategic lawsuits against public participation, or SLAPP suits, involve communications made to influence a government action or outcome which results in a civil complaint or counterclaim filed against individuals or organizations on a substantive issue of some public interest or social significance. SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution.
Although Washington state adopted the first modern anti-SLAPP law in 1989, that law has, in practice, failed to set forth clear rules for early dismissal review. Since that time, the United States supreme court has made it clear that, as long as the petitioning is aimed at procuring favorable government action, result, product, or outcome, it is protected and the case should be dismissed. This bill amends Washington law to bring it in line with these court decisions which recognizes that the United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making.
Laws of 2002, ch. 232, § 1.
¶ 29 Thus, for the first time, the legislature expressly recognized the constitutional threat that SLAPP litigation poses. In amending RCW 4.24.510, the legislature provided that "good faith" was no longer an element of the SLAPP defense and added a provision allowing statutory damages of $10,000 in addition to attorney fees and costs for defending. However, "[s]tatutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." RCW 4.24.510.[2]
¶ 30 Under RCW 4.24.510, "the potential SLAPP target enjoys a near absolute statutory immunity." Johnston, 38 Gonzaga L.Rev. at 286. The difference in chapter 4.24 RCW as originally enacted and as amended in 2002 has been described as converting RCW 4.24.510 "from a whistleblower statute to a true anti-SLAPP statute." Johnston, 38 Gonzaga L.Rev. at 286.
¶ 31 The fact that RCW 4.24.500 remains as it was originally enacted while RCW 4.24.510 was expressly amended to adequately address SLAPP suits and protect the right to petition government indicates to me that the statutes provide broader protection than would be true if these statutes addressed only citizens' First Amendment rights to petition governmentat the least, the "whistleblowing" nature of RCW 4.24.500 remains as well. Indeed, the plain language of the statutes shows that the term "communications" is broadly intended. RCW 4.24.500 refers to communication of "information ... concerning potential wrongdoing" in the context of law enforcement and efficient government operation. RCW 4.24.510 refers to immunity for communications "regarding any matter reasonably of concern to" a government agency. These terms, by their plain language, are not limited to the "communications made to influence a government action or outcome" (Laws of 2002, ch. 232, § 1) that are so often the subject of SLAPP suits, although they certainly encompass such communications.
¶ 32 Given the language and history of the pertinent statutes, I am not convinced that whether a "person" enjoys free speech rights in the sense of the right to petition the government is dispositive of the question whether a government agency is a "person" qualifying for RCW 4.24.510's immunity from civil liability. Broader communications are encompassed by the statute, and it cannot be *1115 doubted that a government agency is entitled to communicate in numerous ways and on innumerable topics.
¶ 33 I nevertheless agree with the majority's result on this question because the statutes' purposes show that government agencies are not "persons" within the contemplation of RCW 4.24.510. The reason for the immunity, as well as for the attorney fees, costs, and statutory damages, is to remove the threat and burden of civil litigation that would otherwise deter the speaker from communicating. RCW 4.24.500, .510; see Laws of 2002, ch. 232, § 1 (referring to the fact that SLAPP suits are designed to intimidate the exercise of rights under the First Amendment and article I, section 5 of the Washington State Constitution). This intimidation factor does not, in my view, affect government agencies in the way that it does private individuals and organizations, and therefore this reason for the statutes does not apply to government entities as it does to individual persons or private organizations. There is a distinction between a privately funded environmental group that seeks to preserve a particular habitat and, for example, an ongoing government agency that reports unlawful conduct or communicates other information to another government agency. Indeed, it is a common requirement of government agencies that they communicate with other government agencies on a variety of topics, with various agency assessments and evaluations being part and parcel of the agency's required communications.
¶ 34 Moreover, insofar as RCW 4.24.510 does encompass petitioning the government to influence decision-making and has as an express purpose the protection of this right, it is similar to the Massachusetts SLAPP law that, the Massachusetts Supreme Court said, is limited to "those defendants who petition the government on their own behalf. In other words, the statutes is designed to protect overtures to the government by parties petitioning in their status as citizens," and therefore it did not apply to the communications of one hired by a government agency made within the context of that employment. Kobrin v. Gastfriend, 443 Mass. 327, 332, 821 N.E.2d 60 (2005) (the Massachusetts statute explicitly states it applies with respect to suits against a party based on the party's exercise of the right to petition, while this purpose is not explicit in RCW 4.24.510 but rather is found in the purpose clause of the amending legislation).
¶ 35 Finally, the purpose section of the amending legislation expressly refers to "individuals" and "organizations," but it does not refer to governmental entities. If the legislature had intended that governmental agencies be included within the protection of the immunity, it could easily have said so.
¶ 36 I agree that the government is not a person entitled to immunity under RCW 4.24.510, for the reasons stated in this opinion.
C. JOHNSON, J. (concurring/dissenting).
¶ 37 The lead opinion correctly holds that the 42 U.S.C. § 1983 claim is time barred and the amendment to the complaint does not relate back. The lead opinion, however, misreads the statute and the cases analyzing it. After examining the legislature's stated purpose for RCW 4.24.510, the lead opinion concludes that the definition of "person" includes only individuals and citizens. This interpretation is not supported by the language of the statute or by its expressed purposes and is contrary to the cases that have examined it.
¶ 38 The legislature's 2002 amendment to RCW 4.24.510 expressly expanded the scope of "person" beyond individuals and citizens. The amendment added an intent section to the statute defining "Strategic Lawsuits Against Public Participation" (SLAPP) as suits involving:
communications made to influence a government action or outcome which results in a civil complaint or counterclaim filed against individuals or organizations on a substantive issue of some public interest or social significance. SLAPP suits are designed to intimidate the exercise of First Amendment rights....
Laws of 2002, ch. 232, § 1 (emphasis added). Narrowly construing the statute to hold that it applies only to individuals and citizens is *1116 contrary to this unambiguous legislative intent to apply the statute to "organizations." The lead opinion, however, limits the scope of RCW 4.24.510 based on the words: "SLAPP suits are designed to intimidate the exercise of First Amendment rights." See lead opinion at 6 ("[t]he purpose of the statute is to protect the exercise of individuals' First Amendment Rights"). The lead opinion latches onto this phrase the same way a drowning sailor latches onto even the smallest piece of flotsamdesperately.
¶ 39 But these words should not control the analysis. A sentence describing the design of SLAPP suits does not limit the protections provided by the statute, especially where the statute expressly states that its provisions apply to organizations in the antecedent sentence. The plain wording of the statute's intent is clear: the protections of RCW 4.24.510 apply equally to both individuals and organizations. There is no policy reasonlet alone judicial precedentsupporting the denial of these protections to a governmental entity, where they apply to organizations as we concluded in Right-Price Recreation, L.L.C. v. Connells Prairie Community Council, 146 Wash.2d 370, 46 P.3d 789 (2002).
¶ 40 In Right-Price, we rejected the narrowly limited interpretation of "person" adopted by the lead opinion here. The petitioners in Right-Price were "two nonprofit corporations," Connells Prairie Community Council and Pierce County Rural Citizens Association, as well as officers and spouses from both corporations. 146 Wash.2d at 374, 46 P.3d 789 (emphasis added). Although whether the corporations were "persons" under RCW 4.24.510 was not at issue in the case, this court ultimately held, among other things, that the statute applied and provided the corporations with immunity. The lead opinion fails to explain why we must overrule and abandon this approach.
¶ 41 The lead opinion ignores the fact that adopting its narrow definition of "person" would require overruling the only other case that has considered whether the definition of "person" from RCW 1.16.080 applies to RCW 4.24.510. See Gontmakher v. City of Bellevue, 120 Wash.App. 365, 85 P.3d 926 (2004). In Gontmakher, the Court of Appeals conducted an analysis similar to that in the present case and concluded that the city of Bellevue is a "person" under RCW 1.16.080 and that this definition applied with equal weight to RCW 4.24.510. 120 Wash.App. at 371, 85 P.3d 926. The Court of Appeals reasoning in Gontmakher is persuasive:
[T]here is no compelling policy reason to restrict the application of RCW 4.24.510 to nongovernmental entities. The Gontmakhers argue that the absolute immunity afforded under the statute provides a disincentive for governmental actors to respect its citizens' rights. This same argument, however, can also be made about private citizens: giving private citizens absolute immunity from any action stemming from communications to governmental agencies serves as a disincentive for citizens to ensure that their comments are made in good faith. The legislature, however, evidenced that this was not its concern by specifically broadening the scope of the immunity to remove the good faith requirement. Additionally, it is important to note that RCW 4.24.510 protects only communications made to governmental agencies that are reasonably of concern to that agency. RCW 4.24.510 does not provide immunity for any other acts. Because the scope of the immunity is limited, allowing governmental immunity here is not against public policy.
120 Wash.App. at 371-72, 85 P.3d 926. The lead opinion would overrule Gontmakher because a city does not have free speech rights protected by the First Amendment. The legislature did not intend for us to construe RCW 4.24.510 so narrowly.
¶ 42 Division Three of the Court of Appeals has paradoxically held that, while the definition of "person" in RCW 1.16.080 may expressly include governmental entities like the Department here, the definition of "person" in RCW 4.24.510 may not. Compare State v. Jeffries, 42 Wash.App. 142, 145, 709 P.2d 819 (1985) ("person" may include governmental entities under RCW 1.16.080) with Skimming v. Boxer, 119 Wash.App. 748, 758, 82 P.3d 707 (2004) ("person" does not include governmental entities under RCW 4.24.510 *1117 citing Right-Price, 146 Wash.2d at 382, 46 P.3d 789). But Skimming based this holding on Right-Price, even though Right-Price did not limit RCW 4.24.510 to nongovernmental entities. Accordingly, there is no judicial precedent to support limiting RCW 4.24.510 to nongovernmental entities.
¶ 43 There are no cases supporting the lead opinion's new approach to RCW 4.24.510. Rather, the lead opinion bases its conclusion to remand this case on its misplaced interpretation of the statute's intent statement. But because RCW 4.24.510, interpreted correctly, provides immunity to the Department, the trial court's dismissal of Segaline's claims was proper. Accordingly, I respectfully dissent to the lead opinion's construction of the statute and decision to remand.
WE CONCUR: GERRY L. ALEXANDER, SUSAN OWENS, and MARY E. FAIRHURST, Justices.
NOTES
[1] Segaline's civil rights claim was an alleged violation by L & I of his constitutional rights under 42 U.S.C. § 1983. The trial court dismissed this claim, reasoning L & I was immune as a state agency under the Eleventh Amendment to the United States Constitution. The Court of Appeals affirmed. Segaline v. Dep't of Labor & Indus., 144 Wash.App. 312, 328-30, 182 P.3d 480 (2008). Segaline did not seek review of that holding.
[2] Segaline did not seek review of his negligent infliction of emotional distress claim in his motion for discretionary review, so it is not before this court now. See RAP 13.7(b).
[3] The court reviews statutory interpretation de novo. State v. Williams, 158 Wash.2d 904, 908, 148 P.3d 993 (2006) (citing Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004)).
[4] The Court of Appeals in Skimming v. Boxer, 119 Wash.App. 748, 758, 82 P.3d 707 (2004), correctly held RCW 4.24.510 granted immunity only to "a non-government individual or organization." That court, however, did not further discuss its holding.
[5] The Court of Appeals in this case mistakenly cited Gontmakher as an opinion of this court. See Segaline, 144 Wash.App. at 323, 182 P.3d 480 ("In Gontmakher, our Supreme Court ruled that the City of Bellevue is a `person' under RCW 4.24.510."). Gontmakher was decided by Division One of the Court of Appeals. See 120 Wash. App. 365, 85 P.3d 926.
[6] Because the immunity under RCW 4.24.510 does not apply to L & I, we need not address Segaline's arguments based upon good faith and the statute's relation to malicious prosecution. Furthermore, we decline to address for the first time the additional arguments left unaddressed by the lower courts concerning Segaline's intentional infliction of emotional distress, malicious prosecution, and negligent supervision claims.
[7] When seeking review before this court, Segaline contradicts his earlier representations and argues that until his arrest "he suffered no actual damage to his liberty rights...." Pet. for Review by Appellant at 21. However, Segaline is bound by his previous factual representations.
[8] For the first time on appeal Segaline argues that his claim is timely under the continuing violation doctrine. Neither the trial court nor the Court of Appeals addressed this argument. This court has no record upon which to address it now and declines to do so. See RAP 2.5(a).
[9] Adding a new party requires a showing that it was not due to "inexcusable neglect" because amendment of a complaint is not intended to serve as a mechanism to circumvent or extend a statute of limitations. This requirement stems from the historical view that the addition of a new party by amending the complaint constituted a new cause of action, so commencement of a "new" cause of action did not relate back to the filing of an earlier action. Hill v. Withers, 55 Wash.2d 462, 467, 348 P.2d 218 (1960).
[10] We have also found inexcusable neglect when a party did not know the identity of the additional party, but could have discovered it from an available source. See Tellinghuisen v. King County Council, 103 Wash.2d 221, 224, 691 P.2d 575 (1984) (citing S. Hollywood Hills Citizens Ass'n, 101 Wash.2d at 77, 677 P.2d 114) (inexcusable neglect where plaintiff could have discovered the identities of the additional parties from public records).
[1] SLAPP is an acronym for "strategic lawsuits against public participation."
[2] RCW 4.24.510 provides:

A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.