# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROGER LEISHMAN, | ) | No. 77754-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | ORDER WITHDRAWING |
| OGDEN MURPHY WALLACE PLLC, | ) | OPINION AND SUBSTITUTING |
| and PATRICK PEARCE, | ) | OPINION |
| | ) | |
| Respondents. | ) | |
| | ) | |

The court has determined that the opinion in the above-entitled case filed on September 3, 2019 shall be withdrawn and a substitute published opinion be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on September 3, 2019 is withdrawn and a substitute published opinion shall be filed.

_____ Mann, ACJ

_____  _____
Chun, J.  Appelwick, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROGER LEISHMAN, | ) | No. 77754-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| OGDEN MURPHY WALLACE PLLC, | ) | PUBLISHED OPINION |
| and PATRICK PEARCE, | ) | |
| | ) | |
| Respondents. | ) | FILED: October 21, 2019 |
| | ) | |

MANN, A.C.J. — Washington's anti-SLAPP statute, RCW 4.24.510,[1] provides

immunity from civil liability for a "person" that communicates a complaint or information

to a federal, state, or local agency, regarding a matter of reasonable concern to the

agency. In Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 470, 238 P.3d 1107

(2010), a plurality of our Supreme Court held that a government agency communicating

information to another government agency is not a "person" and therefore not afforded

immunity under RCW 4.24.510. We are asked here to determine whether a

---

[1] As the legislature explained:
Strategic lawsuits against public participation, or SLAPP suits, involve communications
made to influence a government action or outcome which results in a civil complaint or
counterclaim filed against individuals or organizations on a substantive issue of some
public interest or social significance. SLAPP suits are designed to intimidate the exercise
of First Amendment rights and rights under Article I, section 5 of the Washington state
Constitution.

LAWS OF 2002, Chapter 232, § 1.

government contractor working within the scope of its contract is a "person" under RCW 4.24.510.

Roger Leishman sued Ogden Murphy Wallace, PLLC and Patrick Pearce (collectively "OMW") for negligence, violation of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW, negligent misrepresentation, fraud, and discrimination, in connection to services rendered by OMW to the Washington Attorney General's Office (AGO) for an internal investigation of a workplace dispute involving Leishman. OMW moved for dismissal on the pleadings, arguing that OMW was immune from civil liability under RCW 4.24.510 for communicating the findings of its investigation to the AGO. The trial court agreed.

On appeal, Leishman contends that RCW 4.24.510 does not support the trial court's decision and that OMW, a government contractor, is not a "person" under the statute. We agree, and consistent with the plurality in Segaline, hold that government contractors, when communicating to a government agency under the scope of their contract, are not "persons" entitled to protection under RCW 4.24.510.

We reverse.

I.

Leishman began employment in July 2015 with the AGO as Chief Legal Advisor for Western Washington University. Shortly after beginning work at the AGO, Leishman began exhibiting serious trichotillomania, anxiety, and other symptoms. Leishman disclosed his symptoms to the AGO as well as his prior history of managing mild anxiety. In November 2015, Leishman's physician diagnosed him with post-traumatic stress disorder (PTSD) and serious codependency. Leishman informed the AGO of his

new diagnosis and ultimately submitted a formal request for reasonable accommodation of his disability in February 2016. In March 2016, Leishman, an openly gay man, also filed a complaint with the AGO, alleging that his supervisor, Kerena Higgins, made homophobic comments towards him. Leishman felt that his PTSD was triggered by Higgins's comments and her micromanagement of his work. During a meeting with Higgins to discuss Leishman's disability accommodation and Higgins's comments, Leishman became aggressive, raised his voice, and pounded his fists.[2]

Higgins complained to the AGO about Leishman's inappropriate conduct and the AGO placed Leishman on home assignment. The AGO retained OMW to conduct an independent investigation into Leishman's sexual orientation discrimination claim against Higgins, and Higgins's allegation that Leishman was inappropriate during their meeting.

OMW drafted a report (OMW Report) concluding that "Leishman has not established support for his complaint of discrimination against him based on sexual orientation as prohibited by AGO polices." The OMW Report also concluded that "Mr. Leishman's conduct during the March 1 meeting [with Higgins] violated expected standards of conduct for his position as reflected in his job description." The AGO terminated Leishman on May 7, 2016.

After his termination, Leishman submitted a tort claim against the State for employment-related claims, and the parties reached a settlement. In the settlement

---

[2] We take the facts alleged by Leishman as true for purposes of our review of OMW's motion to dismiss. Becker v. Cmty. Health Sys., Inc., 184 Wn.2d 252, 257-58, 359 P.3d 746 (2015).

No. 77754-8-I/4

agreement, Leishman "released his claims against the State, including the AGO, and any officers, agents, employees, agencies, or departments of the State of Washington."

Subsequently, Leishman sued OMW for negligence, violation of the CPA, negligent misrepresentation, fraud, and discrimination. In Leishman's complaint, he alleged that OMW was not acting as the AGO's agent and therefore his claims against OMW were not barred by his settlement agreement with the AGO.

OMW filed a motion for judgment on the pleadings, under CR 12(c), on the basis that RCW 4.24.510 granted it immunity for its communication of the OMW Report to the AGO. Leishman responded that "no Washington decision discusses the potential applicability of RCW 4.24.510 to ordinary vendor-customer communications where the customer happens to be a government agency."[3]

The trial court granted OMW's motion for judgment on the pleadings and subsequently entered an order for attorney fees and costs pursuant to RCW 4.24.510. Leishman appeals.

II.

RCW 4.24.510 provides immunity from civil liability for a "person" that communicates a complaint of information to a federal, state, or local agency, regarding a matter of reasonable concern to the agency.[4] Leishman contends that RCW 4.24.510

---

[3] The parties only addressed whether RCW 4.24.510 required dismissal of Leishman's complaint, and did not address whether OMW was an agent of the AGO and therefore barred under the settlement agreement.

[4] RCW 4.24.510 states:
A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern

-4-

was intended to protect private citizen whistleblowers and not immunize government contractors from civil liability for work done on behalf of the government. We agree.

A.

We review a trial court's judgment on the pleadings de novo. Pasado's Safe Haven v. State, 162 Wn. App. 746, 752, 259 P.3d 280 (2011). As part of our review, "we examine the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, which would entitle the claimant to relief." Pasado's Safe Haven, 162 Wn. App. at 752. "The factual allegations in the complaint are accepted as true." Nw. Animal Rights Network v. State, 158 Wn. App. 237, 241, 242 P.3d 891 (2010).

The interpretation of the language in RCW 4.24.510 presents an issue of statutory interpretation, which is also reviewed de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). The goal of statutory interpretation is to "ascertain and carry out the legislature's intent." Jametsky, 179 Wn.2d at 762. We give effect to the plain meaning of the statute, "derived from the context of the entire act as well as any related statutes which disclose legislative intent about the provision in question." Jametsky, 179 Wn.2d at 762 (internal quotations omitted). If the statute's language is unambiguous, then the inquiry ends. Jametsky, 179 Wn.2d at 762. If, however, the language is subject to more than one reasonable interpretation, we "may resort to

---

to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." Jametsky, 179 Wn.2d at 762.

B.

Our decision turns on whether the term "person" in RCW 4.24.510 extends immunity to government contractors working within the scope of their contract, such as OMW. Our Supreme Court addressed the meaning of "person" in the plurality decision Segaline. After concluding that the term "person" is ambiguous, the four justice lead opinion authored by Justice Sanders, and a concurrence by Justice Madsen, agreed that a government agency is not a "person" under RCW 4.24.510. The lead opinion and concurrence, disagreed on the underlying reasoning. Compare Id. at 472-74 with Id. at 479-83.

In Segaline, an employee at the Washington State Department of Labor and Industries (L&I) called the police when Segaline, an electrical contractor, harassed L&I employees when applying for electrical permits. Segaline, 169 Wn.2d at 471. Eventually, Segaline was arrested. Segaline sued L&I claiming negligent infliction of emotional distress, intentional infliction of emotional distress, malicious prosecution, negligent supervision, and violation of his civil rights. Id. at 472. L&I claimed immunity under RCW 4.24.510, arguing its communication to the police was protected. Id. at 472-73. The plurality in Segaline found that L&I, a government agency, was not a "person" within the meaning of RCW 4.24.510. Segaline, 169 Wn.2d at 474-75.

Because Segaline only addressed government agency to government agency communication, it is not dispositive on whether a government contractor performing services for a government agency is a "person" under RCW 4.24.510. The question

before us, therefore, is if a government agency is not a "person" afforded immunity under RCW 4.24.510 for its communications to another government agency, is a government contractor performing work on behalf of an agency a "person," and therefore immune from civil liability for its communications to a government agency? The reasoning of the Segaline plurality, along with the legislative intent behind RCW 4.24.510, support the conclusion that a government contractor is not immune from liability for providing paid communications to a government agency.

The Segaline lead opinion reasoned that a government agency is not a "person" under RCW 4.24.510 because "[t]he purpose of the statute is to protect the exercise of individuals' First Amendment rights under the United States Constitution and rights under article I, section 5 of the Washington State Constitution" and should not extend to government agencies, which do not have First Amendment rights to protect. Segaline, 169 Wn.2d at 473 (citing RCW 4.24.510, Historical and Statutory Notes).

Justice Madsen agreed that the legislature, in adopting RCW 4.24.510, "expressly recognized the constitutional threat that SLAPP litigation poses." Id. at 480. Justice Madsen, however, was not convinced that a "person's" free speech rights "is dispositive of the question whether a government agency is a 'person' qualifying for RCW 4.24.510's immunity from civil liability." Segaline, 169 Wn.2d at 482. The crux of the issue for Justice Madsen was the purpose of the statute—removing "the threat and burden of civil litigation" that could deter a speaker from communicating to the government. Segaline, 169 Wn.2d at 482. Justice Madsen concluded that the threat of litigation did not affect government agencies the same as it did individuals. Segaline, 169 Wn.2d at 482.

Justice Madsen compared RCW 4.24.510 with Massachusetts's similar SLAPP law that the Massachusetts Supreme Court held was limited to defendants that petition the government on their own behalf. Segaline, 169 Wn.2d at 482-83 (citing Korbin v. Gastfriend, 433 Mass. 327, 332, 821 N.E.2d 60 (2005)). The facts in Korbin are similar to the facts here—a government agency hired a government contractor to conduct an investigation into a licensed psychiatrist. Korbin, 443 Mass. at 329. As a result of the investigation, the government agency suspended the psychiatrist's license. Id. at 329. The psychiatrist sued the investigator under various tort theories and the Korbin court grappled with whether the Massachusetts's anti-SLAPP statute barred the psychiatrist's claims. Id. at 332. The Korbin court found that the anti-SLAPP statute did not bar the psychiatrist's claims because neither the statute nor the legislative history "suggests any intention to protect a government-retained investigator acting on behalf of an administrative agency." Id. at 337. Furthermore, "the board contracted with the defendant to engage in investigative activities in aid of the board's case against the plaintiff, and he was compensated for his services." Id. at 337.

Justice Madsen's concurrence extended the reasoning of Korbin to find that RCW 4.24.510 should not protect a government agency's communication with another government agency from civil liability. Justice Madsen explained:

> Moreover, insofar as RCW 4.24.510 does encompass petitioning the government to influence decision-making and has as an express purpose the protection of this right, it is similar to the Massachusetts SLAPP law that, the Massachusetts Supreme Court said, is limited to "those defendants who petition the government on their own behalf. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens," and therefore it did not apply to the communications of one hired by a government agency made within the context of that employment.

Id. at 482-83.

Justice Madsen's concurrence also finds support in the legislative intent. The legislative intent behind RCW 4.24.510 is explained in both RCW 4.24.500 and the Historical and Statutory Notes to RCW 4.24.510. In RCW 4.24.500, the legislature explained:

> Information provided by citizens concerning potential wrongdoing is vital to law enforcement and efficient operation of government. The legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending against such suits can be severely burdensome. The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make good-faith reports to appropriate government bodies.

Further, when the legislature amended RCW 4.24.510 to remove a "good faith" requirement, the legislature added a detailed statement explaining the intent of RCW 4.25.510:

> Strategic lawsuits against public participation, or SLAPP suits, involve communications made to influence a government action or outcome which results in a civil complaint or counterclaim filed against individuals or organizations on a substantive issue of some public interest or social significance. SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution.
> Although Washington State adopted the first modern anti-SLAPP law in 1989, that law has, in practice, failed to set forth clear rules for early dismissal review. Since that time, the United States Supreme Court has made it clear that, as long as the petitioning is aimed at procuring favorable government action, result, product, or outcome, it is protected and the case should be dismissed. Chapter 232, Laws of 2002 amends Washington law to bring it in line with these court decisions which recognizes that the United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making.

LAWS OF 2002, ch. 232, § 2. This legislative intent makes clear that RCW 4.24.510 was meant to protect a citizen's right to advocate to government agencies and public participation in governance.

The same reasons that underlie the Segaline plurality apply to government contractors in this case. The Segaline lead opinion concluded that government agencies are not immune under RCW 4.25.510 because they are not exercising First Amendment rights. When government contractors are communicating, for the purpose of carrying out their duties under a contract with a government agency, they are similarly not exercising First Amendment rights. If we were to find otherwise, then a government agency could escape the constraints of RCW 4.25.510, as dictated in Segaline, by engaging contractors to carry out government functions.

As Justice Madsen's concurrence and the legislative intent make clear, RCW 4.24.510 was meant to protect a citizen's right to advocate to government agencies and public participation in governance. Insulating government contractors from civil liability for injury caused by their contracted submissions to government agencies does not meet the intent behind RCW 4.24.510. When a government contractor is hired to conduct an internal investigation and report its findings to the government agency, it is not exercising its right to petition the government on its own behalf, advocating to government, or attempting to have effect on government decision making. Instead, the government contractor is performing the work of a government agency. The contractor benefits from being paid for its services and any communication to the government agency as a result of the services rendered is not the type of communication that RCW 4.24.510 was intended to protect.

We hold that government contractors, when communicating to a government agency under the scope of their contract, are not "persons" entitled to protection under RCW 4.24.510.

We reverse both the judgment on the pleadings and the award of attorney fees to OMW and remand for proceedings consistent with this opinion.[5]

_____ Mann, ACJ

WE CONCUR:

_____ Cox, J.

_____ Appelwick, J.

---

[5] Because the issue was not raised below or before us on appeal, we specifically do not address whether OMW was an "agent" of L&I and thus whether Leishman is precluded from seeking relief under the terms of the settlement agreement.